DARLENE HULL, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF RONALD LEE HULL, ET AL., PLAINTIFFS v. E. PRESTON OLDHAM, ET AL., DEFENDANTS

JOEL A. CANTRELL, AS ADMINISTRATOR OF THE ESTATE OF CRYSTAL SUZANNE CANTRELL, ET AL., PLAINTIFFS v. E. PRESTON OLDHAM, ET AL., DEFENDANTS

No. 9021SC308

(Filed 3 September 1991)

1. **Sheriffs and Constables § 4 (NCI3d); Public Officers § 9 (NCI3d) — law officers — duty to protect individuals from criminal acts of others**

    Ordinarily, law enforcement agencies and officials are not under a duty to protect individuals from criminal actions of others unless there is a special relationship between the injured person and the police or a special duty arising because the police have promised protection to a particular individual.

    **Am Jur 2d, Sheriffs, Police, and Constables § 94.**

    **Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as a result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.**

2. **Sheriffs and Constables § 4 (NCI3d); Public Officers § 9 (NCI3d) — victims shot by sniper — no breach of duty by sheriff and deputies**

    A sheriff and his deputies did not breach any duty to three victims who were shot by a sniper while riding in vehicles

HULL v. OLDHAM

[104 N.C. App. 29 (1991)]

when they misinformed relatives of the sniper about involuntary mental commitment procedures before the shootings occurred. Therefore, the sheriff and deputies were not liable in damages for the deaths of two victims and injuries to the third victim on the basis of negligence or gross negligence in giving the erroneous advice.

**Am Jur 2d, Sheriffs, Police, and Constables § 94.**

**Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as a result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.**

3. **Sheriffs and Constables § 4 (NCI3d); Public Officers § 9 (NCI3d) — shootings by sniper — no special duty by sheriff to protect victims**

No special relationship existed between three victims who were shot by a sniper while riding in vehicles and defendants, a sheriff and his deputies, which gave rise to a special duty by defendants to protect the victims from being shot after defendants had misinformed the sniper's relatives about involuntary mental commitment procedures and after defendants had learned that the sniper had shot into another person's vehicle where the complaints do not allege that defendants promised protection to the victims, and there was no allegation that defendants assumed any greater duty to the victims than that owed to the general public.

**Am Jur 2d, Sheriffs, Police, and Constables § 94.**

**Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as a result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.**

4. **Principal and Surety § 3 (NCI3d) — actions on sheriffs' bonds — statements of claims for relief**

Plaintiffs' complaints stated claims against the sheriffs of two counties on their official bonds in an action to recover for deaths and injuries from shootings by a sniper who fired at passing motorists. N.C.G.S. § 58-76-5; N.C.G.S. § 162-8.

**Am Jur 2d, Sheriffs, Police and Constables §§ 203, 205.**

**Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as a result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.**

**HULL v. OLDHAM**

[104 N.C. App. 29 (1991)]

5. **Sheriffs and Constables § 1 (NCI3d)— claims against sheriffs— jurisdiction of superior court**

Sheriffs are local rather than state officers so that claims against them were not required to be brought in the Industrial Commission but were properly instituted in the superior court.

**Am Jur 2d, Sheriffs, Police and Constables § 2.**

APPEAL by plaintiffs and defendants from judgment entered 20 December 1989 by *Judge Marvin K. Gray* in FORSYTH County Superior Court. Heard in the Court of Appeals 21 February 1991.

On 17 July 1988, Michael Hayes shot and killed four people including Ronald Lee Hull and Crystal Suzanne Cantrell and injured several others including plaintiff Darlene Hull. One year later, plaintiffs Darlene Hull and Joel A. Cantrell filed separate actions against Preston Oldham, individually and as Sheriff of Forsyth County, several Forsyth County deputies and lieutenants, Paul McCrary, individually and as Sheriff of Davidson County, and a Davidson County deputy, alleging negligence, and against the bonding companies on the sheriffs' bonds.

*Michael Lewis for plaintiff-appellants, plaintiff-appellees.*

*Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, by Michael K. Curtis, for plaintiff-appellants, plaintiff-appellees.*

*Womble Carlyle Sandridge & Rice, by Richard T. Rice, Kurt C. Stakeman and James Daniel McNatt, for defendant-appellants, defendant-appellees.*

*Frank B. Aycock, III for defendant-appellees.*

ORR, Judge.

*Procedural History*

Both plaintiffs alleged in their complaints five claims for relief: (1) gross negligence or negligence on the part of each individual defendant; (2) liability of defendant Oldham and his bonding company, United States Fidelity and Guaranty Company, under his official bond; (3) liability of defendant. Oldham's deputies and lieutenants and another bonding company, Hartford Accident and Casualty Company, under a separate bond issued to Forsyth County; (4) liability of defendant McCrary as Sheriff of Davidson County and his bonding company, Western Surety Company, under his

official bond; and (5) liability of defendant McCrary's deputy and Western Surety Company under a separate bond issued to Davidson County.

Defendants filed motions to dismiss in both cases pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. On 7 September 1989, both plaintiffs filed notices of voluntary dismissal pursuant to Rule 41 as to all claims against Hartford Accident and Casualty Company, effectively dismissing their third claims. In addition, plaintiff Cantrell filed notice of voluntary dismissal as to his claims against defendants Aronhime, Crawley and Chadwick of the Forsyth County Sheriff's Department, Davidson County Sheriff McCrary, Deputy Godfrey, and Western Surety Company, effectively dismissing his fourth and fifth claims.

On 20 December 1989, the trial court in each case allowed all motions to dismiss pursuant to Rule 12(b)(6) regarding the first claims for relief alleging gross negligence and denied all motions regarding the second claims. The trial court denied all motions to dismiss Hull's fourth claim pursuant to Rule 12(b)(6) but granted motions to dismiss Hull's fifth claim. The trial court denied all Rule 12(b)(1) motions in both cases. Pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, the trial court entered final judgment as to the first and fifth claims and found no just reason to delay the appeal.

From this judgment, plaintiffs and defendants appealed. Defendants petitioned this Court to issue a writ of certiorari pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure as to the trial court's denial of defendants' motions to dismiss under Rules 12(b)(6) and 12(b)(1), and the plaintiffs joined in that petition. The petition was allowed 11 April 1990.

*Facts*

Plaintiffs allege the following facts regarding the events which took place over a three day period in 1988:

July 15

A Forsyth County deputy was dispatched to Edwards' Moped Shop, which was run by Michael Hayes. Part of his conversation with Hayes "centered around firearms and how [he] could procure

certain firearms." Hayes asked how he could mount a shotgun on a moped because he said he was "going to Hanging Rock the next day and planned to shoot the tires out of any car that tried to run him off the road."

### July 16

On the evening of July 16, Hayes was seen making obscene gestures and shooting into the air. At 4:17 p.m., his mother called the Forsyth County Sheriff's Department and told them Hayes was crazy, needed to be in a mental hospital, and had a shotgun. Three officers from the Forsyth County Sheriff's Department went to the moped shop and talked with Hayes. "Hayes was cursing and very arrogant and advised the deputies to 'Come on back I have something for you.'" The officers did not check his criminal record on which there was a warrant outstanding for his arrest.

Later that day his stepfather, Garris Edwards, went to the shop. "Hayes became angry, and smashed both fists against a wall, apparently breaking his hand." Edwards took him to North Carolina Baptist Hospital. Edwards then talked with a Forsyth County deputy sheriff about having Hayes committed, but the deputy erroneously told him Hayes could not be involuntarily committed at that time and not in Forsyth County. "The deputy had radioed a dispatcher . . . to ask about commitment procedures, and was told that because Hayes lived in Davidson County, he would have to be committed in that county."

At 7:45 p.m. an unidentified person called the Forsyth County Sheriff's Department to inform them Hayes was "having a nervous breakdown" and had a shotgun. Five minutes later, Hayes's uncle, James Starling, called the Forsyth County Sheriff's Department and told them Hayes was threatening to kill Edwards. At 7:55 p.m. three deputies were dispatched to the moped shop and were told to "use caution because Hayes had a gun." The deputies observed Hayes on the porch, and then "decided to pull back their location to the Griffith Volunteer Fire Department."

### July 17

Around 4:00 a.m. Edwards called the Forsyth County Sheriff's Department and was told that Hayes could be involuntarily committed that day but that "the commitment process would take about eight hours, and could probably not be done in Forsyth County."

Five times before the shooting began, Hayes's family members and friends called the Forsyth County Sheriff's Department about Hayes. "Sheriff Oldham and his deputies not only ignored these pleas for help, but in fact gave erroneous and misleading information regarding available and appropriate commitment proceedings."

At 11:40 a.m. Edwards called the Forsyth County Sheriff's Department, told an officer "that Hayes had had a nervous breakdown and had threatened to kill him." He pleaded for commitment procedures to begin. He was told that he should go to Davidson County, that magistrates " 'don't like to be called out unless it is a dire emergency,' " and that " 'it would probably be better to do something tomorrow.' " He was also told the Sheriff's Department would take Hayes to the county line. At around 11:15 p.m. a Davidson County Sheriff's Department dispatcher was called after a pickup truck driven by Gene Petty was shot at near the moped shop, and a Davidson County deputy arrived soon after to check the damage to the truck at a service station. Two Forsyth County deputies drove past him on their way to the moped shop while he was writing the report, and he "ignored the shooting which was occurring in front of his own eyes, and continued to do nothing to assist in the apprehension of Hayes until after Hayes was arrested."

At 11:24 p.m. the Winston-Salem Police Department was notified that Hayes was shooting at passing cars. Subsequently, additional calls were made to the Forsyth County Sheriff's Department including one from Garris Edwards saying that "there was a person laying [sic] in the parking lot and Hayes was going to kill someone else." At 11:27 the Police Department notified the Sheriff's Department that Hayes was shooting at passing cars. At 11:32 p.m. the Davidson County Sheriff's Department reported to the Forsyth County Sheriff's Department that they had " 'the subject that was shot,' " and around this time Crystal Suzanne Cantrell, who had been heading south on Old Salisbury Road, was killed by Hayes.

Again at 11:33 p.m. the Forsyth County Sheriff's Department received another call about the shooting, and someone reported "his truck had been hit by gun fire." Around 11:34 p.m. the Forsyth dispatcher noted that Hayes was the same person who was having problems the prior evening. Several others were subsequently wounded by Hayes. At 11:39 the Forsyth County Sheriff's Department confirmed Hayes was the same individual they had dealt with the prior evening, and around this time Thomas Nicholson was shot

and killed. At 11:41 the first Forsyth deputy arrived on the scene followed by several others.

Around this time, Ronald Hull, his wife, and son were heading home on Friedburg Road. "Their customary and shortest route was to turn right onto Old Salisbury Road, heading south." When they reached the stop sign at the intersection of Friedburg and Old Salisbury roads, the Forsyth County deputies had blocked the road so that they could not turn right so he turned left. There were no warnings, blue lights, or sirens warning of the danger, and Ronald Hull was shot and killed by Hayes and plaintiff Darlene Hull was injured when they neared the shop. Around 11:54 p.m., a deputy shot Hayes, and he was then arrested.

Plaintiff Darlene Hull sustained a severe and permanent injury. She seeks to recover for her own injuries and for the wrongful death of Ronald Hull. Plaintiff Cantrell seeks to recover for the wrongful death of Crystal Suzanne Cantrell.

I.

The first issue on appeal is whether the trial court erred in granting defendants' motions to dismiss plaintiffs' negligence claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990). Where a motion to dismiss is made pursuant to Rule 12(b)(6), "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

In order for there to be liability in tort, defendants must have been under a legal duty of care. *Coleman v. Cooper*, 89 N.C. App. 188, 366 S.E.2d 2, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988). "Actionable '[n]egligence is the failure to exercise proper care in the performance of a *legal duty* which [a] defendant owe[s] the plaintiff under the circumstances surrounding them.'" *Id.* at 192, 366 S.E.2d at 5 (quoting *Moore v. Moore*, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966)). It "presupposes the existence of a legal relationship between the parties by which the injured party is owed a duty which either arises out of a contract or by operation of law." *Vickery v. Olin Hill Construction Co.*, 47 N.C. App. 98, 103, 266 S.E.2d 711, 715, *disc. review denied*, 301 N.C. 106 (1980).

"The breach of duty may be by negligent act or a negligent failure to act." *Moore*, 268 N.C. at 112-13, 150 S.E.2d at 77.

[1] The general rule followed in this state is that ordinarily law enforcement agencies and officials are not under a duty to protect individuals from criminal actions of others unless there is a "special relationship" between the injured person and the police or a "special duty" arising because the police have promised protection to a particular individual. *Coleman*, 89 N.C. App. at 193-94, 366 S.E.2d at 6; *Lynch v. N.C. Dep't of Justice*, 93 N.C. App. 57, 376 S.E.2d 247 (1989); *Braswell v. Braswell*, 98 N.C. App. 231, 390 S.E.2d 752, *disc. review allowed*, 327 N.C. 137, 394 S.E.2d 168 (1990). "[I]nstead their duty is to preserve the peace and arrest lawbreakers for the protection of the general public." *Lynch*, 93 N.C. App. at 60, 376 S.E.2d at 249.

Plaintiffs acknowledge in their brief the existence of controlling case law in this state applying the "public duty doctrine" but urge this Court to overrule or modify this doctrine. Although some states have abandoned or restricted this doctrine, we are bound by the prior decisions of this Court and have no authority to overrule these decisions. *See In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (a Court of Appeals panel may not overrule a prior decision of a different panel on the same issue in a different case unless the prior decision has been overturned by a higher court).

A.

[2] Plaintiffs first contend that defendants Sheriff Oldham and his deputies should have foreseen Hayes's conduct and are liable for gross negligence or negligence in giving erroneous advice regarding the commitment procedures to Hayes's relatives which plaintiffs allege proximately caused the deaths of plaintiffs' decedents and injury to plaintiff Darlene Hull. We disagree.

Here plaintiffs' complaints allege Sheriff Oldham was grossly negligent in training and supervising his deputies as to the appropriate procedure for involuntary mental commitment and for his deputies' failure "to handle properly mental commitment procedures." Plaintiffs further alleged that he was grossly negligent in "failing to transport Hayes to an area facility for mental examination . . . after he took command of the situation, and assumed,

or should have assumed custody of Hayes." Plaintiffs alleged a Forsyth County deputy and lieutenant were grossly negligent in failing to handle mental commitment procedures properly and failing to communicate information among the various shifts.

We do not believe that the existing law of this state allows us to impose on the defendants any duty to the victims arising out of the giving of advice to Hayes's relatives. Plaintiffs argue that because the officers were aware Hayes was armed and mentally disturbed and they undertook to give advice which was incorrect, they assumed a duty and are liable. The only North Carolina case cited by plaintiffs regarding liability for the giving of erroneous advice is *Ferguson v. Williams*, 92 N.C. App. 336, 374 S.E.2d 438 (1988), where the defendant pharmacist gave advice to the victim upon request and the victim relied on the advice in taking the medicine. This Court stated: "[w]hile a pharmacist has only a duty to act with due, ordinary care and diligence, this duty, like all others, expands and contracts with the circumstances." *Id.* at 341, 374 S.E.2d at 440. Further, the Court stated: "[w]hile a pharmacist has no duty to advise absent knowledge of the circumstances . . ., once a pharmacist is alerted to the specific facts and he or she undertakes to advise a customer, the pharmacist then has a duty to advise correctly." *Id.*

Significantly, there the pharmacist gave advice to the *victim* who relied to her detriment on the advice. In contrast, in the present case neither the sheriff nor the deputies gave any advice to the victims on which they relied to their detriment but instead misinformed relatives of the perpetrator of the crimes. We therefore are bound to conclude that defendants did not owe plaintiffs any duty in the giving of advice; thus, plaintiffs cannot sustain their claim of negligence.

B.

[3] Plaintiffs next contend that because the erroneous advice prevented Hayes's relatives from having him committed, thereby increasing the danger to the victims, and because a deputy had "constructive control" of Hayes at the hospital, a special relationship arose between the victims and the defendants, who had "special training and special knowledge of danger," giving rise to a duty to control Hayes and prevent further harm.

**HULL v. OLDHAM**

[104 N.C. App. 29 (1991)]

As we noted above, there are exceptions to the general rule of no liability where a special relationship exists between the victim and law enforcement, such as where the victim is in police custody, or where law enforcement officials have promised protection to a particular person, the protection is not given, and the "reliance on the promise of protection is causally related to the injury suffered." *Coleman*, 89 N.C. App. at 193-94, 366 S.E.2d at 6; *Lynch*, 93 N.C. App. at 60, 376 S.E.2d at 249. In *Lopez v. City of San Diego*, 190 Cal. App. 3d 678, 681, 235 Cal. Rptr. 583, 585 (Cal. Ct. App. 1987), the California Court of Appeals stated that a relationship which does give rise to a legal duty "has been held to depend on representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed."

In *Martin v. Mondie*, 94 N.C. App. 750, 381 S.E.2d 481 (1989), plaintiff, who was injured in an accident involving an automobile driven by defendant Mondie and owned by defendant Flinchum, who was a passenger in the car, sought to recover against the Town of Mount Airy on the grounds that the police department was negligent in failing to serve three outstanding warrants on Mondie for driving violations. This Court cited *Coleman* and the two exceptions therein and held that summary judgment was proper since there was no allegation or forecast of evidence of any "special duty" arising out of a promise to plaintiffs for protection which was not given and no forecast of evidence of any "special relationship" as mentioned in *Coleman. Martin*, 94 N.C. App. at 753, 381 S.E.2d at 483. ·The Court stated that the outstanding arrest warrants created a duty only to the public at large. *Id.*

Here the complaints do not allege the defendants had promised protection to Cantrell and the Hulls. Further, the plaintiffs did not allege that there was *any* relationship between the victims and the defendants much less a special relationship as in the other cases. Further, there is no allegation showing defendants assumed any greater duty to the victims than that owed to the general public. Thus we conclude that the defendants were not under any special duty to the victims.

C.

Next plaintiffs contend that there should be a duty because defendants had "actual knowledge of imminent danger from an

**HULL v. OLDHAM**

[104 N.C. App. 29 (1991)]

identified individual at an identified location, in which potential victims could be identified as motorists passing that location and in which harm could have been prevented by warnings to the motorists, by cutting off access and by controlling the perpetrator sooner. . . ." Plaintiffs alleged that defendant sheriffs were negligent in training and supervising deputies in sniper shooting incidents, isolating the crime scene, failing to take action to arrest and in failing to provide communication. Plaintiffs further alleged that deputies were negligent in failing to isolate the crime scene, failing to respond to sniper shooting and protecting the victims. Plaintiffs next contend that regardless of whether defendants had previously assumed control of the situation, they clearly took charge on July 17 following the shooting of the truck. Plaintiffs argue that the response should have been quick in light of the events of the prior two days, access to Hayes should have been cut off, and clear warnings given. Plaintiffs also argue once the defendants took charge in this instance, they were under a duty to prevent harm to plaintiffs. However, we concluded above that because the defendants were not under any legal duty of care and there was no special relationship between the defendants and the victims or special duty, the trial court did not err in dismissing plaintiffs' negligence claims.

II.

[4] The second issue on appeal is whether the trial court erred in denying defendants' motions to dismiss plaintiffs' second claims and plaintiff Hull's fourth claim pursuant to Rule 12(b)(6) regarding the liability under the sheriffs' official bonds. Defendants argue that "an official bond does not create liability for the principal where no liability exists without it."

A bond is required under N.C. Gen. Stat. § 162-8 (1987) which provides:

The sheriff shall furnish a bond payable to the State of North Carolina for the due execution and return of process, the payment of fees and moneys collected, and the faithful execution of his office as sheriff, which shall be conditioned as follows:

The condition of the above obligation is such that . . . he shall well and truly execute and due return make of all process : . . and *in all other things well and truly and faithfully execute the said office of sheriff during his continuance therein*,

then above obligation to be void; otherwise . . . . (Emphasis added.)

N.C. Gen. Stat. § 58-76-5 (1989), providing for liability and right of action on official bonds, states:

Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; and no such bond shall become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and *every such officer and the sureties on his official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of his office.* (Emphasis added.)

In *State ex rel. Williams v. Adams*, 288 N.C. 501, 503, 219 S.E.2d 198, 200 (1975), our Supreme Court stated: "G.S. 109-34 [predecessor to § 58-76-5] gives plaintiff a cause of action against the officers and the surety." The Court further stated:

G.S. 109-34 has been broadly construed over its long history to cover not only acts done by the officer but also acts that should have been done. The last clause of the statute has been held to enlarge the conditions of the official bond to extend to all official duties of the office.

288 N.C. at 504, 219 S.E.2d at 200 (citations omitted).

Therefore, under section 58-76-5 a cause of action is available to plaintiffs for the "neglect, misconduct or misbehavior" of defendants independent of their negligence claims.

In their second claims, plaintiffs alleged that the conduct and certain acts of defendant Oldham constitute "neglect, misconduct or misbehavior" and are therefore a breach of his duty. Further, plaintiff Hull in his fourth claim alleged that acts and conduct of defendant McCrary constitute "neglect, misconduct or misbehavior." We conclude that the allegations of plaintiffs' complaints are sufficient to state a claim upon which relief may be granted, and therefore the trial court did not err in denying defendants' motions to dismiss.

## III.

[5]  Defendants also argue in the alternative that the trial court erred in denying their motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (1990) on the grounds that a sheriff and deputies are state officers and thus under N.C. Gen. Stat. § 143-291 (1990), jurisdiction for these claims lies with the North Carolina Industrial Commission. We disagree.  ·

Article VII of the North Carolina Constitution entitled "Local Government" provides that "[t]he General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities, and towns." N.C. Const. art. VII, § 1. Article VII further provides: "[i]n each county a Sheriff shall be elected by the qualified voters thereof at the same time and places as members of the General Assembly are elected and shall hold his office for a period of four years, subject to removal for cause as provided by law." N.C. Const. art. VII, § 2. In providing for the organization of local governments, our Constitution does not make sheriffs state rather than local officers. In an Alabama case cited by defendants, *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987), the court held that a sheriff is a state officer where the state constitution explicitly stated that "[t]he executive department shall consist of a governor . . . and a sheriff for each county." *Id.* at 443. Our courts have consistently exercised jurisdiction on appeal from the superior courts. *See Braswell*, 98 N.C. App. 231, 390 S.E.2d 752; *Helmly v. Bebber*, 77 N.C. App. 275, 335 S.E.2d 182 (1985); *Williams*, 288 N.C. 501, 219 S.E.2d 198. Defendants have cited no North Carolina case in which sheriffs were not considered local officers.

Affirmed.

Judges JOHNSON and PARKER concur.