MARGARET VANASEK, Administratrix of the ESTATE OF JEFFREY VANASEK, and MARGARET VANASEK, Plaintiff v. DUKE POWER COMPANY, CITY OF CHARLOTTE, J.M. BUTLER, R.C. STAHNKE, UNKNOWN OFFICER #1, UNKNOWN FIREMAN #1, and UNKNOWN FIREMAN #2, Defendants

No. COA98-607

(Filed 16 February 1999)

**Cities and Towns— public duty doctrine—dangling power line—police and fire officers—no special duty**

The trial court properly granted a Rule 12(b)(6) dismissal and summary judgment for the City of Charlotte and its police officers and firemen on the public duty doctrine in a negligence action arising from a dangling live power line after an ice storm. There is no allegation in the complaint that the City defendants made a promise to decedent on which he relied, or that decedent had any special relationship with the City defendants. Plaintiff's contention that the downed power line constituted an ultrahazardous circumstance is immaterial, because North Carolina does not recognize a high risk exception to the public duty doctrine.

VANASEK v. DUKE POWER CO.

[132 N.C. App. 335 (1999)]

Appeal by plaintiff from order filed 30 June 1997 by Judge Ronald K. Payne and from order filed 8 January 1998 by Judge Raymond A. Warren in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 January 1999.

*DeVore, Acton, & Stafford, PA, by Fred W. DeVore, III, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by F. Lane Williamson, for defendant-appellees.*

GREENE, Judge.

Margaret Vanasek (Plaintiff), both individually and as the administratrix of the estate of Jeffrey Vanasek (Decedent), appeals from the trial court's orders dismissing her complaint against the City of Charlotte, J.M. Butler, R.C. Stahnke, Unknown Officer #1, Unknown Fireman #1, and Unknown Fireman #2 (collectively, City Defendants).

In April of 1997, Plaintiff filed a complaint against Duke Power Company (Duke Power) and City Defendants, alleging that a power line located at 809 McAlway Road, Charlotte, North Carolina, snapped during an ice storm on Friday, 2 February 1996, leaving a broken line charged with over 7000 volts of electricity dangling a few feet above the ground. Nearby homeowners contacted Charlotte's police department, and two officers "were dispatched to the scene and located the broken wire." The officers had the dispatcher notify Duke Power that the lines were down at that location, and left the scene "without providing any type of barrier or visible warning around or near the live wire to protect unsuspecting citizens from accidentally touching the wire." The fire department responded as well, and two firemen allegedly "located the downed power line but also left the premises without providing any type of barrier or visible warning around or near the live wire to protect unsuspecting citizens from accidentally touching the wire." Finally, the Plaintiff alleges that on Monday, 5 February 1996, Decedent, an employee of Time Warner, drove to 809 McAlway Road to repair the cable television lines in that area. Decedent parked his truck near the downed electrical line and while "apparently walking to the back of his truck to retrieve his tools, his hand brushed against the wire sending a high voltage electrical current through his body killing him."

In Count I of the complaint, Plaintiff alleges that City Defendants negligently failed to properly train its officers and firemen, negli-

gently failed to provide warnings to the public of the downed power line, and negligently abandoned a "live" downed power line. In Count II of the complaint, Plaintiff alleges that City Defendants are negligent *per se* under N.C. Gen. Stat. § 160A-296, a statute requiring municipalities to keep their streets free from dangerous obstructions. Count III of Plaintiff's complaint alleges that the acts of City Defendants were "willful or wanton or done in total disregard for the rights and safety of others."

Pursuant to motions filed by City Defendants, the trial court dismissed Counts I, II, and III of Plaintiff's complaint. Plaintiff subsequently voluntarily dismissed her claims against Duke Power and appealed from the trial court's dismissal of her claims against City Defendants.

The issue is whether the public duty doctrine requires the dismissal of Plaintiff's negligence, gross negligence, and/or negligence *per se* claims.

The public duty doctrine provides that a municipality ordinarily acts for the benefit of the general public when exercising its police powers, and therefore cannot be held liable for negligence or gross negligence in performing or failing to perform its duties. *Sinning v. Clark*, 119 N.C. App. 515, 518, 459 S.E.2d 71, 73 (holding that the municipality and its agents had no liability for allegedly negligent inspections conducted pursuant to the building code), *disc. review denied*, 342 N.C. 194, 463 S.E.2d 242 (1995); *Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 406, 442 S.E.2d 75, 79 (holding that the public duty doctrine bars claims of gross negligence, recklessness, and wilful and wanton conduct, and only ceases to apply "where the conduct complained of rises to the level of an intentional tort"), *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994). The public duty doctrine is based on the following premise:

> The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a . . . general duty of protection in the law of tort . . . could and would inevitably determine how the limited police resources . . . should be allocated . . . .

*Braswell v. Braswell*, 330 N.C. 363, 371, 410 S.E.2d 897, 901-02 (1991) (holding that sheriff had no liability for failure to furnish police protection to plaintiff) (quoting *Riss v. City of New York*, 240 N.E.2d 860,

VANASEK v. DUKE POWER CO.

[132 N.C. App. 335 (1999)]

860-61 (N.Y. 1968)), *reh'g denied,* 330 N.C. 854, 413 S.E.2d 550 (1992). If a negligence claim survives application of the public duty doctrine, the municipality may nonetheless be insulated from liability by virtue of governmental immunity. *See Stafford v. Barker,* 129 N.C. App. 576, 584, 502 S.E.2d 1, 5 (holding that a municipality's waiver of governmental immunity does not affect the public duty doctrine inquiry), *disc. review denied,* 348 N.C. 695, —— S.E.2d —— (1998).

Our courts recognize a "narrowly applied" exception to the public duty doctrine where there is a "special duty" between the municipality and "a particular individual." *Davis v. Messer,* 119 N.C. App. 44, 56, 457 S.E.2d 902, 909, *disc. review denied,* 341 N.C. 647, 462 S.E.2d 508 (1995). A "special duty" exists where the municipality " 'promis[es] protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " *Id.* (quoting *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902); *see Hull v. Oldham,* 104 N.C. App. 29, 37, 407 S.E.2d 611, 616 (holding that the public duty doctrine barred claims for negligence where "neither the sheriff nor the deputies gave any advice *to the victims* on which they relied to their detriment but instead misinformed relatives of the perpetrator of the crimes" (emphasis added)), *disc. review denied,* 330 N.C. 441, 412 S.E.2d 72 (1991). A "special duty" may also exist by virtue of a "special relationship," such as that between "a state's witness or informant . . . [and] law enforcement officers." *Hunt v. N.C. Dept. of Labor,* 348 N.C. 192, 199, 499 S.E.2d 747, 751 (1998). A "special relationship" depends on "representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed." *Hull,* 104 N.C. App. at 38, 407 S.E.2d at 616.[1] Finally, a "special duty" may be created by statute; provided there is an express statutory provision vesting individual claimants with a private cause of action for violations of the statute.[2]

---

1. Although our cases have discussed a "special relationship" as a separate exception to the public duty doctrine, *see Braswell,* 330 N.C. at 371, 410 S.E.2d at 902, the "special relationship" exception is actually a subset of the "special duty" exception, 2 Sandra M. Stevenson, *Antieau on Local Government Law* § 35.06[3] (2d ed. 1998) (listing "special relationship" as a subcategory of the "special duty" exception). In other words, a "special relationship" is one basis for showing the existence of a "special duty." *See Hunt,* 348 N.C. at 197, n.2, 499 S.E.2d at 75, n.2 (noting that most jurisdictions refer to either "special duty" or "special relationship" as one exception).

2. Our caselaw generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute. *See, e.g., Stanley v. Moore,* 339 N.C. 717, 454 S.E.2d 225 (1995) (holding that

**VANASEK v. DUKE POWER CO.**

[132 N.C. App. 335 (1999)]

*See Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 714, *reh'g denied*, 348 N.C. 79, 502 S.E.2d 836, *and cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (1998) (holding that breach of a statutory duty requiring workplace inspections does not give rise to a cause of action against the municipality where the statute does not provide a private cause of action); *Hunt*, 348 N.C. 192, 499 S.E.2d 747 (holding that breach of a regulatory duty requiring go-kart inspections does not give rise to a cause of action against the municipality where the regulation does not provide a private cause of action).

We note that a minority of jurisdictions have created an additional exception to the public duty doctrine for "high risk" situations, allowing a negligence claim to proceed where the plaintiff shows that "local government officials knew or should have known the plaintiff or members of his class would be exposed to an unusually high risk if care was not taken by local government personnel, even without proof of reliance by the plaintiff." 2 Sandra M. Stevenson, *Antieau on Local Government Law* § 35.06[3] (2d ed. 1998); *see, e.g., Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I. 1992) ("egregious conduct" exception); *Hansen v. City of St. Paul*, 214 N.W.2d 346, 349 (Minn. 1974) ("inherently dangerous condition" exception). North Carolina courts, however, have not excepted "high risk" situations from the public duty doctrine. *See Hull*, 104 N.C. App. at 38-39, 407 S.E.2d at 616 (holding, without specifically addressing the evident high risk, that even where the police department allegedly had "actual knowledge of imminent danger from an identified individual at an identified location," the public duty doctrine required dismissal of the plaintiffs' negligence claims). Indeed, the creation of any public duty doctrine exceptions beyond those specifically recognized by our Supreme Court is a matter better left to that Court or to our General Assembly.

---

section 42-25.9, which provides that "in any action brought by a tenant . . . under this Article, the landlord shall be liable to the tenant," allows a private cause of action); *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E.2d 677 (1985) (holding that "Chapter 95 . . . contains no right of private action"); *Clinton v. Wake County Bd. of Education*, 108 N.C. App. 616, 424 S.E.2d 691 (holding that section 115C-326(b) "only contemplates the possibility of a suit against an employee" and therefore contains "no independent right of action against a school board"), *disc. review denied*, 333 N.C. 574, 429 S.E.2d 570 (1993). *Cf. Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16, 62 L. Ed. 2d 146, 152 (1979) ("The question whether a [federal] statute creates a [private] cause of action, either expressly or by implication, is basically a matter of statutory construction."); *Cort v. Ash*, 422 U.S. 66, 78, 45 L. Ed. 2d 26, 36 (1975) (listing relevant factors for determining "whether a private remedy is implicit in a [federal] statute not expressly providing one").

VANASEK v. DUKE POWER CO.

[132 N.C. App. 335 (1999)]

In this case, Plaintiff's allegations involve the exercise of City Defendants' police powers; therefore, the public duty doctrine is implicated. Plaintiff does not allege any intentional misconduct on the part of City Defendants which would survive application of the public duty doctrine. Instead, Plaintiff contends that her negligence claims fall within the exception to the public duty doctrine because City Defendants owed Decedent a "special duty." We disagree.

There is no allegation in the complaint that City Defendants made a promise to Decedent on which he relied, or that Decedent had any "special relationship" with City Defendants. Plaintiff's contention that the downed power line constituted an "ultrahazardous circumstance" is immaterial, because North Carolina does not recognize a "high risk" exception to the public duty doctrine. Although Plaintiff is correct that cities have a statutorily imposed "duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions," see N.C.G.S. § 160A-296(a)(2) (1994), fire chiefs have a statutorily imposed duty to "seek out and have corrected all places and conditions dangerous to the safety of the city and its citizens from fire," see N.C.G.S. § 160A-292 (1994), and Charlotte's ordinances impose a duty on Charlotte's fire department to carry out its "mission [of] minimiz[ing] the risk of fire and other hazards to the life and property of the citizens of Charlotte . . . [by] provid[ing] effective fire prevention," see Charlotte, N.C., Code § 8-1 (1998), these provisions do not impose a "special duty" on City Defendants. Even assuming City Defendants breached these provisions, each imposes a general duty to the public at large and none provide a private cause of action for individual claimants.[3] We must therefore conclude that City Defendants owed Decedent no "special duty."[4]

---

3. We acknowledge the existence of a long line of cases allowing individual plaintiffs to proceed with negligence suits against a municipality pursuant to section 160A-296(a)(2). See, e.g., Clark v. Scheld, 253 N.C. 732, 117 S.E.2d 838 (1961); Cooper v. Town of Southern Pines, 58 N.C. App. 170, 293 S.E.2d 235 (1982). The public duty doctrine was neither raised nor addressed in those cases, however, and, in any event, we are bound by the Supreme Court's recent holding in Stone. See Mahoney v. Ronnie's Road Service, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996), aff'd per curiam, 345 N.C. 631, 481 S.E.2d 85 (1997) (noting that this Court is bound by the holdings of our Supreme Court).

4. We do not address Plaintiff's additional contention that any "special duty" owed to the homeowners who called the police department would also provide an exception for guests of those homeowners, because Plaintiff's complaint does not allege that Decedent was a guest of anyone to whom a "special duty" may have been owed.

**HUDSON-COLE DEV. CORP. v. BEEMER**

[132 N.C. App. 341 (1999)]

Accordingly, as Plaintiff's allegations do not bring her claims of negligence, gross negligence, or negligence *per se* within the recognized "special duty" exception to the public duty doctrine, the trial court properly dismissed Counts I, II, and III of Plaintiff's complaint.

Affirmed.

Judges JOHN and HUNTER concur.