VERNETTA MARIE COCKERHAM-ELLERBEE, INDIVIDUALLY AND AS ADMINISTRATRIX OF
THE ESTATE OF CANDICE COCKERHAM, PLAINTIFF v. THE TOWN OF JONESVILLE,
D/B/A THE JONESVILLE POLICE DEPARTMENT, SCOTT VESTAL AND LEE GWYN,
DEFENDANTS

No. COA05-576

(Filed 7 March 2006)

**1. Appeal and Error— appealability—denial of motion to dismiss—public duty doctrine—substantial right**

Although an appeal from the denial of a motion to dismiss is generally an appeal from an interlocutory order, an appeal based on the public duty doctrine involves a substantial right warranting immediate appellate review.

**2. Police Officers— negligence—public duty doctrine—special duty exception**

The trial court did not err by denying defendants' motion to dismiss based on the public duty doctrine in a negligence case arising out of officers' negligence in failing to enforce domestic violence protective orders after they knew of repeated violations, failing to warn plaintiff and her daughter that they had not arrested the perpetrator, and failing to protect plaintiff and her daughter after officers knew the perpetrator had not been arrested, because: (1) plaintiff's complaint reveals a special duty was created by virtue of a promise made by the officers to protect plaintiff and her children, the protection was not forthcoming since the officers failed to fulfill their promise to arrest the perpetrator, and plaintiff and her daughter's reliance on the promise of protection was causally related to the injury suffered; and (2) the police officers' assurances were much more specific than those made in *Braswell v. Braswell*, 330 N.C. 363 (1991), plaintiff had a protective order in this case while the wife in *Braswell* did not, and the Supreme Court reviewed *Braswell* in light of a Rule 50 motion made at the end of the trial whereas in this case the Court of Appeals is reviewing the judge's ruling made following a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6).

Appeal by defendants from judgment entered 2 March 2005 by Judge James M. Webb in Yadkin County Superior Court. Heard in the Court of Appeals 23 January 2006.

**COCKERHAM-ELLERBEE v. TOWN OF JONESVILLE**

[176 N.C. App. 372 (2006)]

*Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellee.*

*Moss, Mason, and Hill, by Matthew L. Mason and William L. Hill, for defendants-appellants.*

STEELMAN, Judge.

Defendants appeal the trial court's order denying their motion to dismiss. For the reasons discussed herein, we affirm the ruling of the trial court.

When reviewing the trial court's denial of a motion to dismiss, we must treat all of the factual allegations contained in the plaintiff's complaint as true. *Lane v. City of Kinston*, 142 N.C. App. 622, 624, 544 S.E.2d 810, 813 (2001). The complaint alleges that on 13 November 2002, plaintiff, Vernetta Marie Cockerham-Ellerbee, obtained a Domestic Violence Protective Order (protective order) against her estranged husband, Richard Ellerbee. The protective order prohibited Ellerbee from threatening plaintiff or her children or coming within 250 feet of them. Pursuant to the requirements of N.C. Gen. Stat. § 50B-3(c), a copy of the order was issued to and retained by the Jonesville Police Department (JPD).

Ellerbee violated the protective order on numerous occasions. On 13 November 2002, Ellerbee dug graves directly across the street from plaintiff's home and threatened to kill her and her children and place their bodies in the graves. Plaintiff reported this to the JPD. The Jonesville Chief of Police came to plaintiff's home where she showed him the graves and told him of Ellerbee's death threats. On 18 November 2002, Ellerbee violated the order when he went to the day-care for one of plaintiff's children. Plaintiff and her seventeen-year-old daughter, Candice Cockerham, were also present. Plaintiff reported Ellerbee's violation of the protective order to the JPD. That same day, plaintiff informed defendant, Scott Vestal (Vestal), a Jonesville police officer, that Ellerbee was following her and his vehicle was within 250 feet of her car at an intersection. Ellerbee was in close proximity to Vestal at this time. Vestal followed Ellerbee for a distance, but failed to arrest him even though Vestal had knowledge of Ellerbee's violations of the protective order. Later that day, plaintiff called the JPD to arrange a meeting. At approximately 5:00 p.m., plaintiff met with Vestal and defendant Lee Gwyn, another Jonesville police officer, at her father's home. When Vestal and Gwyn arrived, she informed them Ellerbee had been stalking her. While they were

there, Ellerbee drove up in front of the home. Vestal and Gwyn promised plaintiff and Candice they were going to arrest Ellerbee. They also promised plaintiff and her daughter that they "would no longer have to worry about their safety." The officers got into their vehicle and followed Ellerbee down the street, which led plaintiff and her daughter to believe they would arrest Ellerbee and place him in jail. However, the officers never arrested Ellerbee, nor did they advise plaintiff of their failure to do so.

On 19 November 2002, Ellerbee broke into plaintiff's home and laid in wait until Candice arrived. When Candice arrived, defendant stabbed her and suffocated her with duct tape, resulting in her death. Ellerbee also repeatedly stabbed plaintiff when she returned home, causing her to sustain serious bodily injuries.

On 18 November 2004, plaintiff filed this action against defendants, the Town of Jonesville and two of its employees, Scott Vestal and Lee Gwyn, in their official capacities. Plaintiff alleged the officers were negligent in failing to enforce the protective order after they knew of Ellerbee's repeated violations, failing to warn plaintiff and her daughter that they had not arrested Ellerbee, and failing to protect plaintiff and her daughter after they knew Ellerbee had not been arrested. Defendants filed a motion to dismiss, asserting the public duty doctrine as a bar to plaintiff's action. By order entered 2 March 2005, the trial court denied defendants' motion. Defendants appeal.

In their sole argument on appeal, defendants contend the trial court erred in denying its motion to dismiss because the public duty doctrine bars plaintiff's negligence claims. We disagree.

## Appealability of Order

[1] Ordinarily, the denial of a motion to dismiss is interlocutory and there is no immediate right of appeal. *Smith v. Jackson Cty. Bd. of Educ.*, 168 N.C. App. 452, 457, 608 S.E.2d 399, 405 (2005). However, because defendant's appeal is based on the public duty doctrine, it "involves a substantial right warranting immediate appellate review." *Id.* at 458, 608 S.E.2d at 405.

## Motion to Dismiss

[2] When reviewing the trial court's denial of a motion to dismiss, we must decide whether the allegations of the complaint are sufficient to state a claim upon which relief may be granted under some legal the-

ory. *Lane*, 142 N.C. App. at 624, 544 S.E.2d at 813. In doing so, we must treat plaintiff's factual allegations as true. *Id.*

## Public Duty Doctrine

In all negligence actions, the plaintiff must prove the defendant owed the plaintiff a duty of care. *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). To be actionable, the duty must be one owed to the injured plaintiff and not one owed to the public in general. *Id.* at 166, 558 S.E.2d at 493-94. This is true regardless of whether the defendant is a governmental entity or a private person. *Id.* Generally, the public duty doctrine bars negligence claims by individuals against a municipality or its agents acting in a law enforcement role for failure to provide protection to that person from the criminal acts of a third party. *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). "This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act," especially since law enforcement has a duty to protect the general public, not specific individuals. *Id.*

As an initial matter, we note that since plaintiff's cause of action is based on defendant's failure to protect her from the acts of a third party rather than any direct misconduct on their part, the public duty doctrine is applicable. *Smith*, 168 N.C. App. at 459-60, 608 S.E.2d at 406.

Next, we must determine whether plaintiff's claim involves " 'the type of discretionary governmental action shielded by the public duty doctrine,' such as those acts that involve 'actively weighing the safety interests of the public.' " *Id.* at 461, 608 S.E.2d at 407 (citations omitted). Our Supreme Court has stated that " 'the public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons.' " *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716 (1998) (citations omitted). N.C. Gen. Stat. § 50B-4.1(b) states: "A law enforcement officer *shall* arrest and take a person into custody without a warrant or other process if the officer has probable cause to believe that the person knowingly has violated a valid protective order . . . ." (emphasis added). N.C. Gen. Stat. § 50B-4(c) states: "A valid protective order entered pursuant to this Chapter *shall* be enforced by all North Carolina law enforcement agencies

without further order of the court." (emphasis added). Plaintiff contends the use of the word "shall" in these statutes creates a mandatory duty as opposed to a discretionary one; therefore, the public duty doctrine is inapplicable.

In *Lassiter v. Cohn*, this Court found it "implicit in *Braswell* and the public duty doctrine that an officer fulfilling his or her duty to provide police protection must employ some level of discretion as to what each particular situation requires, criminal or otherwise." 168 N.C. App. 310, 317, 607 S.E.2d 688, 692-93, *disc. review denied*, 359 N.C. 633, 613 S.E.2d 686 (2005). The United States Supreme Court expressed this same opinion in *Town of Castle Rock v. Gonzales*, stating:

> "In each and every state there are long-standing statutes that, by their terms, seem to preclude nonenforcement by the police . . . . However, for a number of reasons, including their legislative history, insufficient resources, and sheer physical impossibility, it has been recognized that such statutes cannot be interpreted literally . . . . They clearly do not mean that a police officer may not lawfully decline to make an arrest."

545 U.S. 748, 760, 162 L. Ed. 2d 658, 671 (2005) (citations omitted). *But see id.* (noting in the alternative that " '[t]here is a vast difference between a mandatory duty to arrest [a violator who is on the scene] and a mandatory duty to conduct a follow up investigation [to locate an absent violator]' ") (quoting *Donaldson v. Seattle*, 831 P.2d 1098, 1104 (Wn. App. 1992)).

Although the use of the word "shall" in these statutes implies that law enforcement has a mandatory duty to arrest those in violation of a protective order, without any ability to exercise any discretion such an interpretation is unreasonable. There are many factors and variables that a police officer must take into consideration in deciding when and where to arrest an individual believed of engaging in criminal conduct, not the least of which is the public's safety. In order to find that the legislature intended a true mandate of police action, a stronger indication would be required. In the absence of such a specific legislative intent, we hold that the statute is discretionary. Since defendants had some level of discretionary authority in carrying out the enforcement of the protective order, we hold the public duty doctrine is applicable.

## Exceptions to the Public Duty Doctrine

The public duty doctrine is not a "blanket defense" to all actions by law enforcement officers. *Smith*, 168 N.C. App. at 461, 608 S.E.2d at 407. "[E]xceptions exist to prevent inevitable inequities to certain individuals." *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. An exception to the doctrine applies where a "special duty" exists between the governmental entity and a specific individual. *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 338, 511 S.E.2d 41, 44, *cert. denied*, 358 N.C. 851, 539 S.E.2d 13 (1999). A "special duty" may be created in one of three ways. First, a "special duty" is created "where the municipality, through its police officers, . . . promise[s] protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902 (citations omitted). Second, a " 'special duty' may be created by virtue of a 'special relationship,' such as that between 'a state's witness or informant . . . [and] law enforcement officers.' " *Vanasek*, 132 N.C. App. At 338, 511 S.E.2d at 44 (quoting *Hunt v. N.C. Dept. of Labor*, 348 N.C. 192, 199, 499 S.E.2d 747, 751 (1998)). We note that some confusion has arisen in this area due to the fact that this Court has previously referred to the "special relationship" exception as being a separate exception to the public duty doctrine, when, in fact, it is "actually a subset of the 'special duty' exception[.]" *Id.* at 338, n.1, 511 S.E.2d at 44 n.1. A "special relationship" is simply another way to show that a "special duty" exists. *Id.* Third, "a 'special duty' may be created by statute; provided there is an express statutory provision vesting individual claimants with a private cause of action for violations of the statute." *Id.* at 338, 511 S.E.2d at 44. Our courts have generally held that a private right of action only exists where the legislature expressly provides for such in the statute. *Id.*

We look first to see whether a special duty was created by virtue of a "promise" made by Officers Vestal and Gwyn to protect plaintiff and her children. In order to fit within this exception, plaintiff must specifically allege in her complaint that defendants promised to protect her, the protection was not forthcoming, and that her reliance on the promise of protection was causally related to the injury suffered. *Id.*

Whether defendants made a promise of protection, thereby creating a special duty, depends not just on the statements made by the police, but must be considered in light of all the attendant circum-

stances. *See Hobbs v. N.C. Dep't of Human Res.*, 135 N.C. App. 412, 419, 520 S.E.2d 595, 601 (1999) (considering not just assurances made by the agencies involved with the placement of a child in foster care, but also considering the tenor of the meetings and the conduct of those representatives in finding the defendants had created a "special duty" by promise); *see also Hull v. Oldham*, 104 N.C. App. 29, 38, 407 S.E.2d 611, 616 (considering both representations and conduct of the police), *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1999).

In the instant case, plaintiff's complaint alleges that plaintiff had obtained a protective order against Ellerbee prohibiting him from being within 250 feet of herself or her children. Pursuant to N.C. Gen. Stat. § 50B-4(c) and 4.1(b), the police had a duty to arrest Ellerbee if they had probable cause to believe he was in violation of the order. Defendants had actual knowledge of the protective order. Plaintiff informed defendants of Ellerbee's violations of the protective order and his repeated threats. On 13 November 2002, the Jonesville Chief of Police visited plaintiff's home and personally saw the graves Ellerbee had dug across the street, in which he threatened to bury plaintiff and her children after he killed them. Defendants also had actual knowledge of Ellerbee's violations of the protective order on two separate occasions on 18 November 2002. Earlier that day, plaintiff informed Officer Vestal that Ellerbee was following her in violation of the order. Officer Vestal was in close proximity to Ellerbee's car and witnessed this violation. He followed Ellerbee for a distance, but failed to make an arrest. Later that day, plaintiff met with Officers Vestal and Gwyn at her father's home and informed them that Ellerbee had been stalking her for much of the day. At that time, Ellerbee drove up in front of the house. The officers promised plaintiff and her daughter they were going to arrest Ellerbee "right then" and that they would no longer have to worry about their safety. Following these assurances, the officers got into their vehicle and followed Ellerbee's car down the street. The officers failed to arrest Ellerbee and the next day he laid in wait at plaintiff's home where he killed Candice and stabbed plaintiff.

Viewing all these allegations as true, plaintiff's complaint contains sufficient allegations to place her within the special duty exception to the public duty doctrine. She specifically alleged that the officers made a promise to protect her and her daughter, that protection was not forthcoming since the officers failed to fulfill their promise to arrest Ellerbee, and that she and her daughter relied on this promise of protection to their detriment.

Defendants assert that *Braswell* is factually indistinguishable from the instant case and that it compels this Court to dismiss plaintiff's action. In *Braswell,* the wife found letters from her estranged husband, a deputy sheriff, which intimated that he planned to kill her and then commit suicide. She told the sheriff she was afraid that her husband would go through with the plan. Although the wife did not obtain a protective order against her husband, the sheriff told her " 'he would see she got back and forth to work safely . . . [and] that his men would be keeping an eye on her.' " 330 N.C. at 369, 410 S.E.2d at 900. A few days later, the wife's husband shot her to death while she was on a lunchtime errand. Based on the public duty doctrine, our Supreme Court found that the sheriff had no specific duty to protect the woman from her husband; that the sheriff's statements were simply general words of comfort and assurance of the type customarily used by law enforcement officers in situations involving domestic problems, and that such promises were not sufficient to constitute an actual promise of protection. *Id.* at 371-72, 410 S.E.2d at 902. Even so, the Court acknowledged that the sheriff's promise to the wife to protect her as she went to and from work was arguably specific enough to create a special duty exception to the public duty doctrine. *Id.* at 372, 410 S.E.2d at 902. However, since the wife was killed while on a lunchtime errand and not while traveling to or from work, the Court determined this was "outside the scope of protection arguably promised by [the sheriff]." *Id.*

The instant case is distinguishable from *Braswell.* The police officers' assurances here were much more specific than those made in *Braswell.* In addition, plaintiff had a protective order, while the wife in *Braswell* did not. Further, the Supreme Court reviewed *Braswell* in the light of a Rule 50 motion made at the end of the trial, while this Court is reviewing the judge's ruling made following a motion to dismiss pursuant to Rule 12(b)(6).

Considering the totality of the circumstances alleged in plaintiff's complaint and treating them as true, we hold plaintiff's allegations are sufficient to state a claim falling under the special duty exception to the public duty doctrine.

Plaintiff need only demonstrate that she meets one exception to the public duty doctrine to survive a motion to dismiss. Since we have held that the allegations in the complaint stated a claim under the special duty exception, we need not determine whether the allegations in the complaint satisfy the requirements of any other exception.

For the reasons discussed herein, we affirm the ruling of the trial court.

AFFIRMED.

Chief Judge MARTIN and Judge McGEE concur.