COCKERHAM-ELLERBEE v. TOWN OF JONESVILLE

[190 N.C. App. 150 (2008)]

———

VERNETTA MARIE COCKERHAM-ELLERBEE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF CANDICE COCKERHAM, PLAINTIFF v. THE TOWN OF JONESVILLE, D/B/A THE JONESVILLE POLICE DEPARTMENT, SCOTT VESTAL AND LEE GWYN, DEFENDANTS

No. COA07-1161

(Filed 6 May 2008)

**Police Officers; Damages and Remedies— negligence—public duty doctrine—special duty exception—punitive damages**

In an action against a town and two town police officers under the special duty exception to the public duty doctrine to recover for the wrongful death of plaintiff's daughter who was murdered by plaintiff's estranged husband, plaintiff's forecast of evidence was sufficient to establish a genuine issue of material fact as to whether defendants' conduct was willful or wanton so

COCKERHAM-ELLERBEE v. TOWN OF JONESVILLE

[190 N.C. App. 150 (2008)]

as to preclude the entry of summary judgment for defendants on the issue of punitive damages where it showed that defendants failed to enforce a domestic violence protective order plaintiff had against her estranged husband; defendant officers knew that the husband had acted violently against plaintiff in the past, that he continued to make threats against her and her children, and that she was actively seeking enforcement of the order against him; plaintiff pointed out her estranged husband to the officers while he was violating the protective order; the officers responded by promising to arrest the husband and leaving; and the officers failed to arrest the husband as promised and therefore placed plaintiff and her children in extreme danger.

Appeal by plaintiff from order entered 23 May 2007 by Judge Michael E. Helms in Superior Court, Yadkin County. Heard in the Court of Appeals 1 April 2008.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*Frazier, Hill & Fury RLLP, by William L. Hill and Torin L. Fury, for defendants-appellees.*

WYNN, Judge.

To make out a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant is liable for compensatory damages and that the conduct causing the plaintiff's injury was accompanied by fraud, malice, or willful or wanton conduct, defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm."[1] Here, because we find that the plaintiff has forecast evidence sufficient to show that a genuine issue of material fact remains as to whether the defendants' conduct was willful or wanton, we reverse the trial court's order of summary judgment for defendants.

On 18 November 2004, Plaintiff Vernetta Marie Cockerham-Ellerbee filed a complaint against the Town of Jonesville, specifically the Jonesville Police Department, and Jonesville police officers Scott Vestal and Lee Gwynn in their official capacities (collectively, "Defendants"), instituting a wrongful death action. The case stemmed

---

1. N.C. Gen. Stat. §§ 1D-5(7), 15(a) (2005).

from the murder of Ms. Cockerham-Ellerbee's daughter Candice, committed by Richard Ellerbee, Ms. Cockerham-Ellerbee's estranged husband. Ms. Cockerham-Ellerbee alleges that Defendants negligently failed to enforce a domestic violence protective order that she had against Mr. Ellerbee, as well as failed to arrest Mr. Ellerbee for violations of the order, failed to warn her or her children that they had not arrested Mr. Ellerbee, failed to provide protection to her and her children, and failed to act with due care or in a reasonably prudent manner in light of all the circumstances. She seeks compensatory and punitive damages in her complaint.

Defendants filed a motion to dismiss Ms. Cockerham-Ellerbee's entire cause of action, which was denied by the trial court on 2 March 2005. This Court affirmed the denial of the motion to dismiss in an opinion filed 7 March 2006; that opinion, located at *Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 626 S.E.2d 685 (2006), offers an excellent overview of the relevant facts of the case. Most significantly, this Court held that the allegations in Ms. Cockerham-Ellerbee's complaint "are sufficient to state a claim falling under the special duty exception to the public duty doctrine." *Id.* at 379, 626 S.E.2d at 690.

Defendants then filed a motion for summary judgment, arguing that (1) Ms. Cockerham-Ellerbee could not establish "reasonable reliance" upon any "special promise" made or "special duty" created by Defendants; (2) Ms. Cockerham-Ellerbee was contributorily negligent as a matter of law; and (3) Ms. Cockerham-Ellerbee was not entitled to punitive damages against any of Defendants as a matter of law. On 23 May 2007, the trial court denied Defendants' motion for summary judgment as to their first two arguments but granted them summary judgment as to Ms. Cockerham-Ellerbee's claim for punitive damages.

Ms. Cockerham-Ellerbee appeals, arguing that a genuine issue of material fact remains as to whether Defendants' conduct was willful or wanton, such that punitive damages could be awarded under statutory law. We agree.

Our standard of review of the grant of a motion for summary judgment is well established. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c)

(2005). In conducting this review, we consider the evidence in the light most favorable to the non-moving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

Under section 1D-15 of the North Carolina General Statutes, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury[,]" namely, fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." *Id.* § 1D-5(7). Further, such conduct "means more than gross negligence," *id.*, and must be proved by "clear and convincing evidence." *Id.* § 1D-15(b).

Prior to the creation of section 1D, governing punitive damages, the Supreme Court of North Carolina noted:

> The purpose of punitive damages . . . is two-fold: to punish the wrongdoing of the defendant and to deter others from engaging in similar conduct. The tort in question must be accompanied by additional aggravating or outrageous conduct in order to justify the award of punitive damages. To constitute outrageous behavior, there must exist evidence of "insult, indignity, malice, oppression or bad motive." Actual ill will or vindictiveness of purpose is not as a rule required[.]

*Rogers v. T.J.X. Cos.*, 329 N.C. 226, 230, 404 S.E.2d 664, 666 (1991) (internal citations and quotation omitted). The Supreme Court has also explained that "[c]onduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 397 (1956). More recently, this Court has stated that a wanton act is one "done with a wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others," and an act is willful "when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another." *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 51, 524 S.E.2d 53, 60 (1999) (quotation and citations omitted).

In Ms. Cockerham-Ellerbee's amended complaint, she states the following:

That the facts alleged above constitute actions by the Defendants which were willful, wanton, reckless and in total disregard of the rights of Candice Cockerham. That the Defendants were substantially aware of the probable consequences of their conduct. That the Defendants, Scott Vestal and Lee Gwyn, as police officers for the Town of Jonesville, participated in the willful and wanton conduct described above. That at the time of said willful and wanton conduct, Scott Vestal and Lee Gwyn held jobs which were tantamount to managerial positions. In addition, the Town of Jonesville condoned the willful and wanton conduct of Scott Vestal and Lee Gwyn, by failing to terminate them and by subsequently promoting them to higher ranking positions after it knew of their willful and wanton conduct.

In her brief to this Court, Ms. Cockerham-Ellerbee outlines "eight (8) separate incidents or events . . . which tend to establish the conscious and intentional disregard of and indifference to the rights and safety of Vernetta Marie Cockerham-Ellerbee and her family by the Defendants." Each of the incidents that she describes was included in either her original complaint against Defendants or in her amended affidavit, filed in response to Defendants' motion for summary judgment.[2]

The trial court's order granting summary judgment to the defendants on Ms. Cockerham-Ellerbee's claim for punitive damages does not specify the basis for its ruling. However, at the hearing, after informing the parties that the trial court was denying the motion for summary judgment as to Ms. Cockerham-Ellerbee's negligence claims, the trial court declared that it planned to dismiss the punitive damages, as "[t]here is absolutely no evidence I have heard of willful or wanton[.]" Later, the trial court inquired:

Intentional? Do you have any evidence that would support a contention—any evidence—not just the contention written on your complaint or in your prayer for relief, but any evidence supporting your contention that, for example, Officer So-and-So was a drinking buddy with him, and when he found him, whatever, he said, "Now, don't go back around there, and I won't take you in," or something like that? Some intentional conduct on

---

2. Also included as an exhibit to the record on appeal is Defendants' motion to strike this amended affidavit and for appropriate sanctions. However, the record does not contain a ruling on that motion to strike or any indication that the trial court did not consider the content of the affidavit when issuing its summary judgment order.

their part that caused them not to follow through with their alleged promise?

Is there any evidence? I mean, I know you contend it, but there ought to be some evidence to support it to get—to go farther with it.

Thus, it seems clear that the basis of the trial court's order was that there was no remaining genuine issue of material fact as to the willful and wanton conduct by Defendants necessary to sustain Ms. Cockerham-Ellerbee's claim for punitive damages.[3]

However, we find that the trial court's remarks, particularly those that Ms. Cockerham-Ellerbee had failed to forecast any evidence of "intentional conduct on [the officers'] part that caused them not to follow through with their alleged promise[,]" reflect a misapprehension of the law of punitive damages. To survive a motion for summary judgment, Ms. Cockerham-Ellerbee does not need to allege facts that show the type of intentional, malicious, or vindictive conduct on the part of Defendants described by the trial court. Rather, her claim for punitive damages need only allege facts that would support a finding of willful or wanton conduct, actions that reflect a "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

The eight incidents described by Ms. Cockerham-Ellerbee in her original complaint and amended affidavit include the following: (1) on 13 November 2002, Ms. Cockerham-Ellerbee obtained a domestic violence protective order against Mr. Ellerbee, which she provided to the defendants on 18 November 2002 and a copy of which was also issued to the Jonesville Police Department by operation of law; (2) Ms. Cockerham-Ellerbee reported to the police on 14 November 2002 that Mr. Ellerbee had broken into her home and threatened her life; (3) on 16 November 2002, Mr. Ellerbee told Ms. Cockerham-Ellerbee

---

3. In her motion requesting oral argument before this Court, Ms. Cockerham-Ellerbee asserts that "[t]his Court has not dealt with the issue of punitive damages as it relates to the conduct of police officers regarding domestic violence since the inception of the punitive damages statute in 1995." Nevertheless, that question was not argued by the parties at the trial level; although Ms. Cockerham-Ellerbee's attorney discussed one case, *Jackson v. Housing Authority of High Point*, 316 N.C. 259, 341 S.E.2d 523 (1986), to support his position that punitive damages could be awarded, the trial court did not dispute that assertion, and the defendants have made no argument to the contrary in their brief. We therefore decline to discuss the matter.

that he had dug graves for her and her children and planned to kill them; she reported the threats to police; (4) in response to the threats, the Chief of the Jonesville Police Department told Ms. Cockerham-Ellerbee that he would place the department on "high alert" and inform the officers to be on the lookout for Mr. Ellerbee so that he could be arrested; (5) on 18 November 2002, Mr. Ellerbee went to the daycare of Ms. Cockerham-Ellerbee's youngest son and, while there, threatened her daughter; Ms. Cockerham-Ellerbee reported these incidents to Officer Vestal and had a magistrate swear out an arrest warrant for Mr. Ellerbee, a copy of which she took to the police department, along with information as to Mr. Ellerbee's home and work locations; (6) also on 18 November 2002, Mr. Ellerbee began following Ms. Cockerham-Ellerbee in his car; she informed Officer Vestal of the stalking in person, while Mr. Ellerbee was immediately behind her; Officer Vestal told her that he would "get" Mr. Ellerbee; (7) while Ms. Cockerham-Ellerbee was meeting with Officer Vestal and Detective Gwyn at 5:00 p.m. on 18 November 2002 at her father's house, Mr. Ellerbee drove by, and the police officers told Ms. Cockerham-Ellerbee and her daughter that they "would no longer have to worry about [their] safety and that they were going to go and arrest Richard Ellerbee right then" before getting into their cars and pursuing Mr. Ellerbee with their blue lights flashing; (8) Ms. Cockerham-Ellerbee and her daughter relied upon the promise of protection by the defendants, who did not notify them that they had failed to arrest Mr. Ellerbee.

Taken together—and viewed in the light most favorable to Ms. Cockerham-Ellerbee, the non-moving party—this evidence is sufficient to allow a jury to decide that Defendants acted "recklessly, manifesting a reckless indifference to the rights of" Ms. Cockerham-Ellerbee and her daughter, see Benton, 136 N.C. App. at 51, 524 S.E.2d at 60, and that they acted with "indifference to the rights and safety of others, which the defendant[s] [knew or should have known was] reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). Defendants knew that Mr. Ellerbee had acted violently against Ms. Cockerham-Ellerbee in the past, that he continued to make threats against her, that she had an enforceable domestic violence protection order against him, and that she was actively seeking its enforcement against him.

According to Ms. Cockerham-Ellerbee, she gave the police Mr. Ellerbee's home and work addresses and also pointed him out to Officer Vestal and Detective Gwyn while he was in the middle of vio-

lating the terms of the protective order. She further forecast evidence that the officers responded by promising to arrest him and then leaving. That alleged promise gave Ms. Cockerham-Ellerbee and her children a sense of security that they would be safe; failing to act on that promise unquestionably placed them in extreme danger—danger of which the police had been made aware—and reflected a reckless disregard for their rights.

The bulk of Defendants' brief to this Court goes to the weight and credibility of Ms. Cockerham-Ellerbee's evidence of willful or wanton conduct; they assert that she has failed to present "clear and convincing" evidence of such conduct. However, such questions are for a jury, not for this Court. Moreover, the facts of the cases cited by Defendants in their brief make them inapposite to the case at hand; in both *Benton*, 136 N.C. App. 42, 524 S.E.2d 53, and *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 268 S.E.2d 855, *disc. review denied*, 301 N.C. 239, 283 S.E.2d 136 (1980), *overruled on other grounds, Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 395 S.E.2d 85, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990), the defendants were found not to be liable for failing to take security measures to protect the plaintiff from the actions of a third party. Nevertheless, neither of those cases involved a legal finding that the plaintiff had "state[d] a claim falling under the special duty exception to the public duty doctrine." *Cockerham-Ellerbee*, 176 N.C. App. at 379, 626 S.E.2d at 690. Moreover, neither contained factual allegations that the defendants had explicitly promised, but failed, to provide such security, or that they had ongoing interactions with the plaintiff and explicit knowledge of the danger posed by the specific third party.

According to the law, Ms. Cockerham-Ellerbee has alleged facts that would constitute willful or wanton conduct if true. Defendants dispute her account of events, showing that a genuine issue of material fact remains as to Defendants' conduct. As such, the trial court erred in granting summary judgment to Defendants on Ms. Cockerham-Ellerbee's claim for punitive damages.

Reversed.

Judges BRYANT and JACKSON concur.