Marino CASTELLANI, Stephanie Castellani, Gabrielle Richwine, Dennis Castellani, Sandra Fantini, and Robert Castellani for the wrongful death of Vincenzina "Enza" Castellani, and Stephanie Castellani, individually, and Gabrielle Richwine, individually, Plaintiffs,

v.

DELAWARE STATE POLICE, a Division of the State of Delaware, Department of Public Safety, Corporal Thomas Wood, in his individual and official capacity, Captain Arthur Blansfield, in his official capacity, and Colonel Alan D. Ellingsworth, in his official capacity, Defendants/Third–Party Plaintiffs,

v.

David Brizzolara, Third–Party Defendant.

C.A. No. 97C–08–40 RRC.

Superior Court of Delaware, New Castle County.

Submitted: April 16, 1999.

Decided: July 15, 1999.

Eric L. Grayson and Stephen F. Dryden, Robinson & Grayson, P.A., Wilmington, for Plaintiffs.

Marc P. Niedzielski, and Michael F. Foster, Deputy Attorneys General, Department of Justice, Wilmington, for Defendants/Third–Party Plaintiffs.

Michael K. Tighe, Tighe, Cottrell & Logan, P.A., Wilmington, for Third–Party Defendant.

## MEMORANDUM OPINION

COOCH, J.

## I. INTRODUCTION

This wrongful death/personal injury action stems from a traffic accident that resulted in the death of Vincenzina Castellani and in personal injuries suffered by Stephanie Castellani and Gabrielle Richwine, occupants of the same car as the decedent. The suit has been instituted by (1)(a) Marino Castellani (the decedent's husband); and (b) Stephanie Castellani, Gabrielle Castellani Richwine, Dennis Castellani, Sandra Castellani Fantini, and Robert Castellani (the decedent's children), for the wrongful death of Vincenzina "Enza" Castellani; (2) Stephanie Castellani, individually; and (3) Gabrielle Richwine, individually (collectively, "Plaintiffs"). Plaintiffs have named as Defendants in this lawsuit (1) the Delaware State Police; (2) Corporal Thomas Wood, in his individual and official capacity; (3) Captain Arthur Blansfield, in his official capacity; and (4) Colonel Alan D. Ellingsworth (Superintendent of the Delaware State Police), in his official capacity (collectively, "Defendants/Third–Party Plaintiffs"). Defendants/Third–Party Plaintiffs in turn have brought a claim for contribution against David Brizzolara ("Third–Party Defendant").

This case arises from a fatal accident that occurred on August 4, 1996. On that day, after at least four individuals contacted Delaware State Police Troop 1 to report a defective traffic signal located at the intersection of Marsh and Wilson Roads, Third–Party Defendant drove his truck through that intersection and struck an automobile driven by Stephanie Castellani. Vincenzina Castellani died as a result of the accident; Stephanie Castellani and Gabrielle Castellani Richwine claim physical and emotional injuries from the accident.

Plaintiffs have generally alleged in this lawsuit "the gross or wanton failure [of the defendants] to carry out their statutorily assigned responsibilities [to protect these Plaintiffs from the accident at Marsh and Wilson Roads where there was located a malfunctioning traffic signal on August 4, 1996]."[1] Defendants/Third–Party Plaintiffs have filed a Motion for Summary Judgment contending that they owe no duty to have regulated traffic at that inter-

---

1. Plaintiffs' Ans. Br. at 21.

section and to have ensured Plaintiffs' safety. The issue that the Court must resolve is: do a law enforcement agency and its employees, when put on notice of a defective traffic signal, owe a duty to the public to regulate traffic to ensure the public's safety? For the reasons stated in this opinion, this Court finds that Defendants/Third–Party Plaintiffs owed no such duty to Plaintiffs; assuming *arguendo* that such a duty existed, it did not run to these specific Plaintiffs because no "special relationship" existed between them and Defendants/Third–Party Plaintiffs. Defendants/Third–Party Plaintiffs' Motion for Summary Judgment must be **GRANTED.**

## II. FACTUAL AND PROCEDURAL HISTORY

The facts in the record are viewed, as they must be, in a light most favorable to Plaintiffs, the non-moving parties.[2] The Court has not set forth all of the facts relied upon by Plaintiffs as set forth in their Answering Brief but assumes, for purposes only of this summary judgment motion, all such facts to be true.

On Friday, August 2, 1996, David Kibler, an employee of the Gulf gas station located at the corner of Marsh and Wilson Roads, told police during the investigation of the accident that the red light for southbound Marsh Road had burned out. On Sunday, August 4 at about 8:30 a.m., A. Barnes King was driving southbound on Marsh Road when he noticed that the traffic signal located at the intersection of Marsh and Wilson Roads turned from green to yellow, but it did not then turn red. He entered the Gulf gas station and requested an unnamed individual to call 911 to report the burned-out red light. After he returned home, he then telephoned the Delaware State Police located at Troop 1 in Penny Hill to report the defective traffic signal.

At approximately 10:00 a.m., an unnamed individual walked into Troop 1 similarly to report a defective traffic signal located at the intersection. No officer apparently contacted RECOM as a result of this walk-in to report the signal outage. Another unnamed individual placed a telephone call to RECOM at approximately 10:09 to report the defective signal. This information was passed on to Jamie R. Adams, a civilian employee of the Delaware State Police, who then reported to Corporal Kathy Davis of the Delaware Department of Transportation that the red light for southbound Marsh Road was not working. Corporal Davis in turn reported the outage to the Department of Transportation signal repairman who was on call. The signal repairman did not report to the scene.

On this same day, between approximately noon and 1:00 p.m., the Ku Klux Klan held a rally at the intersection of Marsh Road and Philadelphia Pike. Captain Arthur Blansfield (the Troop 1 Commander), along with several other officers, were dispatched to the rally at approximately 11:51 a.m. Corporal Thomas Wood reported for desk duty at Troop 1 at approximately 11:50 a.m.

Between 12:20 p.m. and 12:30 p.m., Joseph Small also telephoned Troop 1 to report the defective traffic signal. Corporal Thomas Wood took the call. At approximately 12:35 p.m., Corporal Wood contacted RECOM about another matter but apparently made no mention of the signal outage at the intersection of Marsh and Wilson Roads.

At 12:43 p.m., Third–Party Defendant was traveling south on Marsh Road in his pick-up truck. Traffic stood still in the left lane which was designated for left turns and through traffic. Third–Party Defendant moved into the right lane designated for right turns only, passed traffic stopped in the left lane, and proceeded straight through the intersection. Third–Party Defendant has testified that he saw no red or yellow signals and that he believed that the light was green in his favor. As he

2. *See Murphy v. Godwin,* Del.Super., 303 A.2d    668 (1973).

drove through the intersection, his pick-up truck struck a vehicle driven by Vincenzina Castellani, which vehicle was turning left from Wilson Road onto Marsh Road. Vincenzina Castellani died as a result of the accident; Stephanie Castellani and Gabrielle Richwine sustained physical and emotional injuries.

After the accident, an unnamed individual walked into Troop 1 to report that an accident had occurred at the intersection of Marsh and Wilson Roads. Corporal Thomas Wood contacted RECOM to report the accident. Ambulances were dispatched to the scene. There being no State Troopers apparently available to send to the scene of the accident, a New Castle County Police Officer was dispatched and arrived at the scene at 12:46 p.m. It was not until 1:49 p.m. that Corporal Philip N. Strohm of the Delaware State Police reported to the scene.[3]

Shortly after Plaintiffs filed their complaint in August 1997, Defendants/Third–Party Plaintiffs filed a Motion to Dismiss for failure to state a claim upon which relief could be granted.[4] Defendants/Third–Party Plaintiffs argued in that motion that "the complaint fails to state a claim upon which relief can be granted for the lack of a legal duty owed to Plaintiffs under existing law, based on the limitations of 10 *Del. C.* § 4001 and the lack of proximate cause."[5] This Court denied that Motion, stating that "the Complaint is specific, meets the requirements of Superior Court Civil Rule 9(b) and it sets forth a[ ] cognizable theory of liability."[6] Thereafter, Defendants/Third Party Plaintiffs filed an Application for Certification of Interlocutory Appeal to the Delaware Supreme Court, which this Court subsequently denied.[7] The Supreme Court refused the interlocutory appeal.[8] After discovery was completed, Defendants/Third–Party Plaintiffs filed the present Motion for Summary Judgment.

## III. THE PARTIES' CONTENTIONS

Movants, Defendants/Third–Party Plaintiffs, contend that no "special relationship" exists between them and Plaintiffs such that a duty to protect them from Third–Party Defendant's conduct attaches. Furthermore, Defendants/Third–Party Plaintiffs contend that Plaintiffs' assertions that 11 *Del. C.* ch. 83 and the State Police Division Manual, both of which implicate the public duty doctrine, are without merit because neither the statute nor the manual create any duty owed by Defendants/Third–Party Plaintiffs to Plaintiffs.

Plaintiffs argue in response that Defendants/Third–Party Plaintiffs' statutory duty to regulate traffic, coupled with their collectively having been put on notice of the defective traffic signal, created a duty to reasonably exercise their duty to regulate traffic. Their failure to have responded timely to the various contacts they received regarding the defective traffic signal, Plaintiffs claim, constituted gross or wanton negligence proximately resulting in Vincenzina Castellani's death and the injuries suffered by Stephanie Castellani and Gabrielle Castellani Richwine.

## IV. DISCUSSION

Summary judgment may be granted

---

3. According to the Fatal Motor Vehicle Accident Report, at approximately 1:00 p.m., Sergeant Pyne contacted Corporal Strohm at home. As a result of that call, Corporal Strohm went into service through RECOM at 1:21 p.m. Plaintiffs' Appendix at A–39.

4. Super. Ct. Civ. R. 12(b)(6).

5. *Castellani v. Delaware State Police,* C.A. No. 97C–08–040 (Sept. 23, 1997) (Dkt.11).

6. *See Castellani v. Delaware State Police,* Del.Super., 97C–08–040, Del Pesco, J. (Dec. 2, 1997) (ORDER) at 1.

7. *See Castellani v. Delaware State Police,* Del.Super., C.A. No. 97C–08–040, Del Pesco, J. (Dec. 17, 1997) (ORDER)

8. *See Delaware State Police v. Castellani,* Del. Supr., No. 537, 1997, Veasey, C.J. (Jan. 7, 1997) (ORDER).

only when no material issues of fact exist[9] and the moving party is entitled to judgment as a matter of law.[10]

### A. Defendants/Third–Party Plaintiffs are Entitled to Judgment as a Matter of Law Because, Under the Public Duty Doctrine, No Duty to Regulate Traffic to Ensure Plaintiffs' Safety is Owed By Defendants/Third–Party Plaintiffs.

It is well-settled that

[n]egligent behavior is usually defined as the failure to meet the standard of care which the law requires. However, liability for negligence is limited by the scope of the legally defined duty. Thus, an antecedent duty of care with respect to the interest involved must be established before liability is imposed.... The scope of the duty of care often turns on the relationship between the party claiming harm and the party charged with negligence.[11]

However, where "government action" is involved, as it is here,

the duty [claimed to be owed to the injured party by a governmental agency or its agents] runs to the public at large and not to specific individuals unless certain facts are established. These are:

(1) an assumption by the [governmental agency or its agents], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [governmental agency or its] agents that inaction could lead to harm; (3) some form of direct contact between the [governmental agency or its] agents and the injured party; and (4) that party's justifiable reliance on the... affirmative undertaking [of the governmental agency or its agents].[12]

9. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680 (1979).

10. Super. Ct. Civ. R. 56(c); *Schueler v. Martin,* Del.Super., 674 A.2d 882, 885 (1996).

11. *Furek v. University of Delaware,* Del.Supr., 594 A.2d 506, 516 (1991). *See also Naidu v. Laird,* Del.Supr., 539 A.2d 1064, 1072 (1988) (holding that "[g]enerally, there is no duty to control the conduct of a third person to prevent him from causing harm to another unless: (a) a special relationship exists between the actor and third party which imposes a duty upon the actor to control the third person's conduct; or (b) a special relationship exists between the actor and the other which gives to the other a right to protection"); *Johnson v. Indian River School District,* Del.Super., 723 A.2d 1200, 1202–03, *aff'd,* Del.Supr., 723 A.2d 397 (1998) (concluding that "[i]n order for an action in tort to lie against someone, that person must owe a duty to the injured party").

12. *Johnson v. Indian River School District,* Del.Super., 723 A.2d 1200, 1203, *aff'd,* Del. Supr., 723 A.2d 397 (1998). *See also Vanasek v. Duke Power Co.,* 132 N.C.App. 335, 511 S.E.2d 41, 43–44 (1999) (concluding that "[t]he public duty doctrine provides that a municipality ordinarily acts for the benefit of the general public when exercising its police powers, and therefore cannot be held liable for negligence... in performing or failing to perform its duties"); 63C Am.Jur.2d *Public Officers and Employees* § 248 (1997) (stating that "[t]he 'public duty' rule holds that the employment duties of public employees are generally owed only to the public as a whole and not to private individuals.... There is an exception to the public duty rule, however, when there is a 'special relationship' between the public employee and certain individual members of the public"); 57 Am.Jur.2d *Municipal, County, School and State Tort Liability* § 430 (1988) (noting that "[t]he tort liability of governmental bodies for the acts or omissions of their law enforcement officers in the course and scope of their duties and authority may be denied for the lack of a duty owed the plaintiff as an individual, apart from the duty generally owed the public at large, unless there is a special relationship between the individual and the public officer or entity giving rise to a duty. Under this view, law enforcement is considered a duty owed the public at large and not actionable by a specific individual, unless a plaintiff can show that the defendant municipality owed him a special duty as may be created either by statute or by a voluntary course of action which the municipality is not required to take but which induces the plaintiff to rely on the city's exercise of reasonable care").

This Court has recently applied this rule, known as the "public duty doctrine." In *Johnson v. Indian River School District*,[13] a case much relied upon by Defendants/Third–Party Plaintiffs, a teacher employed by a school district had issued a "blue certificate" to a teenage driver afflicted with polio entitling the teenager to obtain his driver's license since he had successfully passed a driver's education course. The "blue certificate" did not contain any restrictions. The Division of Motor Vehicles then issued a license with no restrictions to the teenager. After he received his license, the teenager subsequently struck and killed a child while driving an automobile. The parents of the child brought suit against the school district and the Division of Motor Vehicles (along with other defendants). The Court granted defendants' motion for summary judgment, concluding that, under the public duty doctrine,

the statutory scheme whereby employees of the State issue drivers' licenses only involves a duty to the public as a whole and not to a specific individual. This is the general rule, but under special circumstances..., the [general] rule does not apply. Absent [a showing of the four factors], which do not exist in this case, there is no duty [owed] to the plaintiffs or their decedent.[14]

■ The application of the public duty doctrine to a claim of failure to regulate traffic to protect the public's safety when a law enforcement agency and its employees have notice of a defective traffic signal is an issue of apparent first impression in Delaware. Defendants/Third–Party Plaintiffs contend in the first instance that they owe no duty to Plaintiffs absent a special relationship. Plaintiffs contend that 21 *Del. C.* § 4103(a), 29 *Del. C.* § 8206, and 11 *Del. C.* § 8301, as well as certain provisions of the Delaware State Police Divisional Manual, serve as the basis for the duty to regulate traffic to ensure Plaintiffs' safety owed by Defendants/Third–Party Plaintiffs.[15]

Title 21 *Del. C.* § 4103(a) [16] does nothing

---

**13.** Del.Super., 723 A.2d 1200, *aff'd,* Del. Supr., 723 A.2d 397 (1998).

**14.** *Id.* at 1203. Numerous cases can be found that support the holding of *Indian River School District. See* John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, not Particular, Duty was Owed Under Circumstances,* 38 A.L.R.4th 1194 § 3 (1985) (stating that "[many] cases explicitly support the view that liability of a governmental entity for torts committed against an individual be premised on the violation of a special or particular duty owed the individual rather than on the violation of a general duty owed by the governmental entity to the public as a whole"); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 131, at 1049–50 (5th ed.1984) (stating that "the overwhelming current of decisions continues to reject liability based on a general failure to provide police protection").

The Court notes, however, that there are some jurisdictions that do not follow the *Indian River School District* approach. *Id.* at § 4. Even so, "under that broader view, the duty imposed is not one of protecting each citizen from all harms, as would render a municipality an insurer or absolutely liable merely by the fact of establishing a police department. Rather the duty is that of acting as a reasonably careful and prudent police department would in the same circumstances." 57 Am. Jur.2d *Municipal, County, School and State Tort Liability* § 441 (1988).

**15.** *See generally* 63C Am.Jur.2d *Public Officers and Employees* § 248 (1997) (stating that "[t]he rule presumes that statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public; such statutes create no duty of care toward individual members of the general public.... [However,] a statute may have the essential purpose of protecting identifiable individuals from a particular harm and, thus, may create[ ] a 'special duty' with regard to such individuals"); *Vanasek v. Duke Power Co.,* 132 N.C.App. 335, 511 S.E.2d 41, 44 (1999) (finding that "a 'special duty' may be created by statute; provided there is an express statutory provision vesting individual claimants with a private cause of action for violations of the statute").

**16.** That statute provides, in pertinent part, that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction

more than prohibit a motorist's wilful[17] refusal to "comply with any lawful order or direction of any police officer... invested by law with authority to direct, control or regulate vehicle... traffic" to confer criminal liability on that motorist. It would indeed be an overly broad reading of this statute for the Court to conclude that 21 *Del. C.* § 4103(a) imposed a duty on the Delaware State Police to have timely responded to the intersection of Marsh and Wilson Roads, and then to have safely regulated traffic.[18]

Title 11 *Del. C.* § 8301[19] and 29 *Del. C.* § 8206[20] also do not support Plaintiffs' theories of liability. These statutes make no mention of a duty to regulate traffic to ensure Plaintiffs' safety imposed upon the Division of State Police when that entity has knowledge of a defective traffic signal.

As to Plaintiffs' contention that provisions of the police manual[21] impose a duty on Defendants/Third–Party Plaintiffs to regulate, the Court agrees with Defendants/Third–Party Plaintiffs that the provisions of this manual cannot create any legal duties that Defendants/Third–Party Plaintiffs would owe to Plaintiffs.[22]

**B. Even if the Court Were to Find That Defendants/Third–Party Plaintiffs Owed a Duty to Regulate Traffic to Ensure the Public's Safety, That Duty Did Not Run to These Particular Plaintiffs.**

■ Assuming *arguendo* that Defendants/Third–Party Plaintiffs owed a duty to Plaintiffs arising from statute or the divisional police manual, those duties do

---

of any police officer... invested by law with authority to direct, control or regulate vehicle and pedestrian traffic."

**17.** *See Edwards v. State*, Del.Supr., 285 A.2d 805, 806 (1971) (concluding that "[21 *Del. C.* § 4103(a)] requires a need to show wilfulness").

**18.** Defendants/Third–Party Plaintiffs contend that 17 *Del. C.* §§ 131(a) and 141(a) vest the Department of Transportation with authority to control state highways. 17 *Del. C.* § 131(a) provides, in pertinent part, that "[a]ll the public roads,... [and] highways... in this State... shall be under the absolute care, management and control of the Department [of Transportation]." 17 *Del. C.* § 141(a) provides, in pertinent part, that "[t]he Department [of Transportation] shall have jurisdiction and control of all state highways of this State... for the purpose of regulating traffic and for the use and operation of all vehicles thereover...." Plaintiffs do not rely on these statutes, nor have they brought suit against the Department of Transportation or against any of its employees.

**19.** 11 *Del. C.* § 8301 provides, in pertinent part, that "[t]he Department of Public Safety... may appoint police officers whose primary duty shall be to compel the enforcement of all laws relating to the weight, speed and operation of vehicles on the public highways of the State."

**20.** 29 *Del. C.* § 8206 provides, in pertinent part, that "[t]he Division of State Police...

shall be responsible for the performance of all the powers, duties and functions heretofore vested in: (1) the State Highway Department... pursuant to subchapter I of Chapter 83 of Title 11."

**21.** Plaintiffs cite several sections of the manual to support their argument. For example, Plaintiffs note that "[t]roopers have an obligation and a responsibility to ensure that intersections controlled by a malfunctioning traffic control device are rendered safe prior to leaving that intersection. This also applies to any notification of a malfunctioning traffic control device either in person or by public service.... [I]t is the responsibility of the Division of State Police to ensure the safe movement of both vehicular and pedestrian traffic on the State's public thoroughfares." Plaintiffs' Ans. Br. at 5.

**22.** Plaintiffs direct the Court's attention to *Bergen v. Koppenal*, 52 N.J. 478, 246 A.2d 442 (1968) and *Mindala v. American Motors Corp.*, 518 Pa. 350, 543 A.2d 520 (1988) to support their contention that Defendants/Third–Party Plaintiffs owed a duty to regulate traffic to ensure their safety. Those two cases are factually distinguishable from the case presently before the Court. In both cases, police officers arrived "on the scene," at which time they discovered problems with the traffic signal. Furthermore, the Court notes that these two cases do not constitute persuasive authority in that they do not reflect Delaware law and, as such, the Court does not follow these cases.

not run to Plaintiffs specifically unless they can satisfy the criteria enunciated in *Indian River*. The Court concludes that, on the record before it, Plaintiffs cannot meet the four-part test enunciated in *Indian River*. First, Defendants/Third–Party Plaintiffs assumed no affirmative duty to act on behalf of these particular Plaintiffs; second, it has not been demonstrated that Defendants/Third–Party Plaintiffs knew that their arguable inaction (in not responding to the intersection prior to the accident despite several contacts from individuals that the traffic signal located at the intersection of Marsh and Wilson Roads was defective) could lead to harm to these particular Plaintiffs; third, there was no form of direct contact between the parties; and finally, the Court cannot conclude that there existed an "affirmative undertaking" upon which Plaintiff could have justifiably relied.

Based upon the above analysis, this Court concludes that Defendants/Third–Party Plaintiffs owe no duty to Plaintiffs and that no "special relationship" existed between these parties.[23] To conclude otherwise "would generate a drastic expansion of liability"[24] better left to the discretion of the General Assembly.[25]

## V. CONCLUSION

The Court concludes that Defendants/Third–Party Plaintiffs did not owe a

**23.** Given this conclusion, the Court need not reach other issues argued by the parties in their briefs, including whether an alleged breach of duty by Defendants/Third–Party Plaintiffs was the proximate cause of Plaintiffs' injuries; the applicability of the State Tort Claims Act; the capacity of Defendants/Third–Party Plaintiffs to sue and be sued; and the viability of Defendant/Third–Party Plaintiffs' contribution claim against Brizzolara. *See, e.g., Johnson v. Indian River School District*, 723 A.2d at 1203 (concluding that "[h]aving decided that the State defendants owed no duty to the plaintiffs . . . , it is unnecessary to consider whether the actions of the defendants are protected by the State Tort Claims Act . . . or whether the acts of the defendants were the proximate cause of the injuries sustained").

**24.** *Id.*

**25.** *See Biloon's Elec. Serv., Inc. v. City of Wilmington*, Del.Super., 401 A.2d 636, 640, 642, *aff'd*, Del.Supr., 417 A.2d 371 (1980) (concluding, among other things, that a repair shop owner could not recover damages from a city based on a claim that the city had failed to provide adequate police protection). In *Biloon's*, the Court queried

"[w]ill municipalities' budgets on police manpower be subject to review because more manpower might have prevented a crime wave? These questions and many similar ones have been answered in the negative by courts in jurisdictions where immunity had been abrogated."

\* \* \* \* \* \*

"A motorist, for instance, has the duty to use due care in the operation of his automobile and the standard to measure that duty is whether his conduct was 'reasonable under the circumstances.' If such a requirement were to be applied to police . . . , the results would be absurd. . . . Does the judge and jury then look at all the facts to determine whether less than that could be necessarily unreasonable? [E]ven more, would not that call into play an inquiry into basic public policy decisions on budgets, taxation and the allocation or deployment of municipal resources? . . . . This points up the argument for non-liability in cases where fundamental tort liability was never heretofore recognized. . . . Does the decision of a city to institute police . . . protection create a duty on the city running to each and every citizen to protect them from all hazards? Certainly not!

*See also City of Rome v. Jordan*, 263 Ga. 26, 426 S.E.2d 861, 863 (1993) (concluding that "'a municipality's provision of police protection to its citizenry [is] a resource-allocating function that is better left to the discretion of the policy makers' . . . , 'the amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed'" [citation omitted] ); *Vanasek v. Duke Power Co.*, 132 N.C.App. 335, 511 S.E.2d 41, 43 (1999) (concluding that "[t]he public duty doctrine is based on the following premise:

The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a . . . general duty of protection in the law of tort . . . could and would inevitably determine how the limited police resources . . . should be allocated . . . ."

*citing Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897, 901–02 (1991)).

duty to regulate traffic to ensure Plaintiffs' safety; even assuming *arguendo* that the Court found such a duty, no "special relationship" existed between these parties such that the duty would run to these specific Plaintiffs. The accident was tragic. In a perfect world, the public would expect instantaneous response by law enforcement agencies to all reported crimes, traffic accidents, malfunctioning traffic signals and the like, but Defendants/Third–Party Plaintiffs cannot be held liable under these facts for this accident. Defendants/Third–Party Plaintiffs' Motion for Summary Judgment is **GRANTED**.[26] It follows that Defendants/Third–Party Plaintiffs' contribution claim against Third–Party Defendant is **DISMISSED** as **MOOT**.

**IT IS SO ORDERED.**

---

**26.** This result is not at variance with an earlier observation of this Court. *See Castellani v. Delaware State Police,* Del.Super., C.A. No. 97C–08–040, Del Pesco, J. (Dec. 17, 1997) (ORDER) at 4 (stating that "[w]hile it is possible that summary judgment will be appropriate [at a later time] as to some or all of the Defendants, such a result cannot be determined on this pre-discovery record").