# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARLET DeETTA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: K21C-07-017 RLG |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE STATE POLICE, | ) | |
| DELAWARE VICTIM'S | ) | |
| COMPENSATION ASSISTANCE | ) | |
| PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  December 3, 2021
Decided: February 4, 2022

## <u>MEMORANDUM OPINION AND ORDER</u>

**Upon Defendants' Motion to Dismiss – GRANTED.**

Carlet DeEtta Ward, *Pro Se Plaintiff.*

Joseph C. Handlon, Esq., Department of Justice, Wilmington, Delaware.  *Attorney for Defendants Delaware State Police, Delaware Victim's Compensation Assistance Program.*

**GREEN-STREETT, J.**

Before the Court is a Motion to Dismiss under Superior Court Civil Rule 12(b)(6) for Plaintiff Carlet DeEtta Ward's ("Plaintiff") failure to state a claim for which relief can be granted. Plaintiff filed a claim against the Delaware State Police (the "DSP") and the Victim's Compensation Assistance Program (the "Agency"). Plaintiff's suit centers around the allegedly unauthorized deconstruction of a chimney at her home. Plaintiff asserts that (1) the DSP should have arrested the individuals responsible for the deconstruction of the chimney; and (2) the Agency should have compensated her for the value of the deconstructed chimney. After reviewing the parties' motions and holding oral argument, the Court agrees that Plaintiff has failed to demonstrate her entitlement to any form of relief. Accordingly, the Motion to Dismiss is **GRANTED**.

## I. Factual and Procedural Background

On January 19, 2021, Plaintiff left work and went to the property located at 201 Voshells Mill Star Hill Road, Dover, Delaware (the "Property"). Plaintiff resides at one of two residences located on the Property. Plaintiff's residence is a two-story, single-family home near the front of the Property. The second residence is a mobile home unit, located at the back of the Property. Plaintiff is not the owner of the Property, but has lived there for the past sixteen years as the "house-sitter of the Estate of Linford W. and Martha G. Harris[.]"[1]

---

[1] Compl. ¶ 1.

2

The Court's understanding of who legally owns and exercises control over the Property remains hazy at best. However, three points regarding the Property's ownership are undisputed. First, although Plaintiff resides on the Property, she is not its legal owner. Second, Plaintiff does not have sole decision-making authority with regard to the Property and any maintenance, repairs, or changes it may require. Third, and finally, there are several familial heirs who have retained legal rights to the Property. Therefore, although Plaintiff, as the "house-sitter" of the estate, has a right to be on the Property, she is not the <u>only</u> individual with the right to exercise control over it.

On the day at issue, Plaintiff returned to her home and discovered two men deconstructing the chimney of her residence.[2] Plaintiff had not authorized any construction work to be done on the chimney, so she called 911 for immediate assistance.[3] In response, six DSP cruisers arrived to the Property.[4] The responding officers stopped the men from working on the chimney, but, after speaking to them, chose not to detain or arrest them.[5] Plaintiff recognized the chimney workers because they had previously completed work on the mobile home unit at the back of the

---

[2] <u>Id.</u>

[3] <u>Id.</u> at ¶ 3.

[4] <u>Id.</u> at ¶ 5.

[5] <u>Id.</u> at ¶¶ 6-8 (internal quotation marks omitted).

Property. Although the DSP officers did not tell Plaintiff the names of the chimney workers, Plaintiff suspected that they were named "Vincent Williams and Rodriguez."[6]

Subsequently, on January 20, 2021, Plaintiff returned to the Property and discovered that the "chimney was stripped down half-way."[7] When she arrived at the Property a day later, on January 21, 2021, "the chimney was down to its base."[8] Plaintiff eventually discovered that the men dismantling the chimney worked for "the Masonry [Doctor]," owned by an individual named Carlton Merriman.[9] Although Plaintiff attempted to contact Mr. Merriman, she was unable to speak with him.[10]

On February 17, 2021, Plaintiff submitted an application to the Agency, seeking compensation for the replacement of the chimney.[11] The Agency determined that Plaintiff was ineligible for compensation and denied her application.[12] Although Plaintiff later initiated the Agency's appeal process, she failed to appear at the

---

[6] Id. at ¶ 8.

[7] Id. at ¶ 9.

[8] Id. at ¶ 10.

[9] Id. at ¶ 11.

[10] Id.

[11] Id. at ¶ 14.

[12] Id. at ¶ 15.

4

subsequent Appeal Board hearing.[13] At oral argument, Plaintiff explained that she did not pursue her appeal because she believed the Agency's executive director, Paige Schmittinger, had a "conflict of interest" with Plaintiff's case.[14] Specifically, Plaintiff surmised that Ms. Schmittinger was connected to the law firm Schmittinger and Rodriguez (the "law firm"). Given Plaintiff's suspicion that one of the men responsible for the chimney's deconstruction was also named "Rodriguez," she reasoned that the law firm – and, by extension, Ms. Schmittinger – may have been involved in the chimney's deconstruction. However, Plaintiff provided no evidence, either to the Agency or to this Court, that would substantiate her claim that either Ms. Schmittinger or the law firm were aware of or involved in the chimney's deconstruction.

On July 23, 2021, Plaintiff filed the instant suit against the DSP and the Agency, seeking $50,000 in damages.[15] Plaintiff claimed that the deconstruction of the chimney was part of an "art heist attempt," as Plaintiff stored her artwork on the second floor of her home.[16] Plaintiff contended that the DSP and the Agency

---

[13] Defs.' Mot. to Dismiss ¶ 8.

[14] Oral Arg. Tr. 39:16-21.

[15] See generally Compl.

[16] Id. at ¶ 17.

(collectively, the "Defendants") "responded with gross negligence and in a nonfeasance manner," and "failed to carry out their responsible duties."[17]

On August 16, 2021, Plaintiff filed a Motion for Default Judgment. In the Motion, Plaintiff argued that Defendants "failed to file a pleading or otherwise defend against [P]laintiff's claim."[18] Plaintiff also repeated the argument that the DSP acted with "negligence and nonfeasance" for failing to "make an arrest of the offenders and to prevent demolition of an unauthorized repair work on a residential property's chimney[.]"[19] She further alleged that, by rejecting her claim for compensation, the Agency "created a direct conflict of interest, as well as leaving her, the Plaintiff, as a victim of a crime that was committed, without any other legal recourse of action."[20] Finally, Plaintiff reiterated her claim that "the original intent on the offenders' part was to perform an 'art heist'" at the Property.[21] Defendants filed a Motion in Opposition, arguing that default judgment was inappropriate because Plaintiff failed to serve the Attorney General, Chief Deputy, or State Solicitor, as required by 10 Del. C. § 3103(c).[22]

---

[17] Id. at ¶ 20.

[18] Pl.'s Mot. for Default J. "COMES NOW" Clause.

[19] Id. at ¶ 1.

[20] Id. at ¶ 2.

[21] Id. at ¶ 5.

[22] Mot. in Opp. to Pl.'s Mot. for Default J. ¶ 2.

In a decision issued on September 17, 2021, the Court denied Plaintiff's Motion for Default Judgment. The Court found that Plaintiff "had failed to serve the Attorney General, the State Solicitor, or the Chief Deputy Attorney General pursuant to 10 Del. C. § 3101(c)."[23] On September 20, 2021, Plaintiff sent a letter to the Court, asking that her "[o]bjection to [the Court's] decision be noted and [for the decision to be] reconsidered as an error [had] been made on the Court's part."[24] The Court viewed this letter as a Motion for Reargument pursuant to Superior Court Civil Rule 59(e).[25] On September 27, 2021, Defendants filed a response, again arguing that default judgment was inappropriate because Plaintiff had not perfected service properly.[26] In an Order issued on October 4, 2021, the Court denied Plaintiff's Motion for Reargument.[27]

On August 19, 2021, Defendants filed the instant Motion to Dismiss. In response, Plaintiff filed a Motion to Quash Defendants' Motion to Dismiss, contending that Defendants failed to file an answer and/or plead in a timely

---

[23] Ward v. Del. State Police, 2021 WL 4519629, at *1 (Del. Super. Oct. 4, 2021).

[24] Pl.'s Mot. for Reargument.

[25] Ward, 2021 WL 4519629, at *1-2.

[26] Defs.' Resp. to Pl.'s Mot. for Recons. ¶ 2.

[27] Ward, 2021 WL 4519629, at *2.

manner.[28] Plaintiff also reiterated the substantive arguments she previously made in her Complaint and Motion for Default Judgment.[29]

On December 3, 2021, the Court held oral argument to address (1) Defendants' Motion to Dismiss; and (2) Plaintiff's Motion to Quash Defendants' Motion to Dismiss. The Court first addressed Plaintiff's Motion. Plaintiff argued that the Motion to Dismiss should be quashed because Defendants failed to respond to her original complaint in a timely manner. Plaintiff raised many of the procedural and substantive arguments previously articulated in her Motion for Default Judgment. The Court concluded that there was no legal basis to grant the Motion to Quash. Accordingly, the Court denied Plaintiff's Motion to Quash Defendants' Motion to Dismiss.

During oral argument on the Motion to Dismiss, in an effort to clarify the factual circumstances surrounding the chimney's deconstruction, the Court asked Plaintiff numerous questions regarding (1) the physical characteristics of the Property; (2) who had ownership and control over the Property; and (3) the timeline of events surrounding the chimney's deconstruction. Plaintiff explained that the Property, which previously belonged to Plaintiff's grandparents, was inherited by

---

[28] Pl.'s Mot. to Quash Defs.' Mot. to Dismiss ¶ 2.

[29] See generally id.

Plaintiff's mother.[30] When Plaintiff's mother died, Plaintiff remained on the property as its "house-sitter."[31] Plaintiff stated that her cousin, Barbara Jean Taylor, is also named on the Property's deed.[32] Plaintiff admitted that other unidentified family members also retain ownership rights to the Property.[33]

Plaintiff further explained that the mobile home at the back of the Property also "belongs to the estate."[34] Plaintiff did not tell the Court who, if anyone, currently lives in the mobile home. However, Plaintiff explained that three of her family members, (1) Angela D. Smith Jefferson; (2) Barbara Alexander Taylor; and (3) Gloria L. Potts, had previously authorized work to be done on the mobile home and the back portion of the Property.[35] The work had been completed by the same men who deconstructed the chimney at Plaintiff's residence.[36] Plaintiff informed the Court that, on the day at issue, Ms. Jefferson, Ms. Taylor, and Ms. Potts had authorized the deconstruction of the chimney.[37]

---

[30] Oral Arg. Tr. 12:1-2.

[31] Id. at 36:21-22.

[32] Id. at 13:15-16.

[33] Id. at 38:1-12.

[34] Id. at 30:10-11.

[35] Id. at 30:22-23.

[36] Id. at 17:21-23;18:1-5.

[37] Id. at 17:2-6.

9

Plaintiff reiterated her argument that, because the DSP is "responsible for protecting and serving the community," it had a "responsibility to take action and do something" to stop the deconstruction of the chimney.[38] Thus, by failing to initiate an arrest, the DSP was "nonfeasance [sic] in [its] duty."[39] Further, Plaintiff explained that, because she was a victim of a property crime, she should have been compensated by the Agency. Plaintiff called the Agency's denial of her claim for compensation a "miscarriage of justice."[40] Finally, Plaintiff again argued that her previous Motion for Default Judgment was wrongly denied. After hearing the arguments from both parties, the Court took the matter under advisement.

## II. Standard of Review

Under Superior Court Civil Rule 12(b)(6), the Court may dismiss for failure to state a claim only if "it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him [or her] to relief."[41] Thus, "[a] complaint will survive [a] motion to dismiss[,] so long as a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under

---

[38] Id. at 24:6-7.

[39] Id. at 25:5-6.

[40] Id. at 40:6-7.

[41] Doe v. Cahill, 884 A.2d 451, 458 (Del. 2005) (internal quotation marks omitted) (citing Ramunno v. Cawley, 705 A.2d 1029, 1034 (Del. 1998)).

the complaint."[42] Because Delaware is a notice pleading jurisdiction,[43] even vague

allegations are considered acceptable if they give the opposing party notice of the

claim.[44] When deciding a motion to dismiss, the Court must accept all well-pled

allegations in the complaint as true,[45] and must draw all reasonable inferences in

favor of the non-moving party.[46] However, the trial court is not required to "accept

conclusory allegations unsupported by specific facts" or to "draw unreasonable

inferences in plaintiff's favor."[47]

## III.   Discussion

## A. The DSP Owed No Duty to Plaintiff

Plaintiff alleges that the DSP responded to her call for assistance with "gross

negligence and in a nonfeasance manner" and "failed to carry out [its] responsible

duties."[48] Her claim is premised upon the DSP officers' failure to arrest the

---

[42] Smith v. Bunkley, 171 A.3d 1118, 1121-22 (Del. Super. 2016) (internal quotation marks omitted) (quoting Spence v. Funk, 396 A.2d 967, 968 (Del. 1978)); Owens v. Lead Stories, LLC, 2021 WL 3076686, at *11 (Del. Super. July 20, 2021) ("On a Motion to Dismiss for failure to state a claim upon which relief can be granted under Delaware Superior Court Civil Rule 12(b)(6), the pleading standard is 'reasonable conceivability.'").

[43] VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 611 (Del. 2003); see also Duncan v. Garvin, 2021 WL 2550656, at *4 (Del. Super. June 21, 2021) ("Under Delaware's notice pleading standards, [the plaintiff] need only provide a short and plain statement alleging that he is entitled to relief.").

[44] Doe, 884 A.2d at 458.

[45] Funk, 396 A.2d at 968.

[46] Owens, 2021 WL 3076686, at *11 (citing In re Gen. Motors (Hughes) S'holder Litig., 897 A.2d 162, 168 (Del. 2006)).

[47] Clinton v. Enterprise Rent-A-Car Co., 977 A.2d 892, 895 (Del. 2009).

[48] Compl. ¶ 20.

11

individuals who dismantled the chimney. Thus, Plaintiff contends that the DSP breached the duty it owed to her, the "public, communities, and neighborhoods[.]"[49]

Defendants counter that Plaintiff's negligence suit against the DSP cannot succeed because the DSP owed no duty to Plaintiff as an individual.[50] Rather, the officers who responded to Plaintiff's 911 call owed a duty to the public at large, and, therefore, cannot be held liable for Plaintiff's alleged property damage.[51] Defendants' argument is premised upon the public duty doctrine.

The public duty doctrine is implicated when a party sues a governmental employee for acts arising out of the government employee's job performance.[52] The doctrine bars claims against public entities or employees when they "owe a duty to the public at large rather than a specific individual."[53] However, the public duty doctrine will not bar a plaintiff's claim if it is based upon (1) a non-discretionary act, or (2) a failure to act.[54] However, even if a plaintiff's claim is based upon a non-discretionary act or a failure to act, the plaintiff must still establish that: (1) the

---

[49] Id.

[50] Defs.' Mot. to Dismiss ¶ 7.

[51] Id.

[52] Johnson v. Indian River Sch. Dist., 723 A.2d 1200, 1203 (Del. Super. 1998); see also Patton v. Simone, 1993 WL 144367, at *13 (Del. Super. Mar. 22, 1993) ("There can be no liability where no duty of care exists for a private individual.").

[53] Hales v. English, 2014 WL 12059005, at *3 (Del. Super. Aug. 6, 2014).

[54] J.L. v. Barnes, 33 A.3d 902, 916 (Del. Super. 2011).

12

defendant assumed an affirmative duty to act on behalf of the plaintiff; (2) the defendant had knowledge that inaction would lead to harm; (3) the defendant had direct contact with the plaintiff;[55] and (4) the plaintiff justifiably relied on the defendant's undertaking.[56] Thus, for the plaintiff to recover, the governmental employee or agency's "response to the private party must in some demonstrable way exceed the response generally made to other members of the public."[57]

Hales v. English demonstrates the applicability of the public duty doctrine.[58] In that case, a DSP officer performed traffic control and direction for the State of Delaware Department of Transportation during a road resurfacing project.[59] The plaintiffs alleged that the officer negligently directed traffic, which resulted in an accident that injured the plaintiffs.[60] In response to the plaintiffs' subsequent lawsuit against it, the State of Delaware argued that it was not responsible for the plaintiffs' damages because, under the public duty doctrine, it did not owe them a duty of care.[61]

---

[55] Delaware case law requires that this prong of the analysis "be interpreted narrowly." Horvat v. State Office of Mgmt. & Budget, 2017 WL 5068574, at *6 (Del. Super. Oct. 30, 2017). Only those having "personal interaction with the individual member of the public can be said to have had 'direct contact.'" Id.

[56] J.L., 33 A.3d at 916 (citing Johnson, 723 A.2d at 1203).

[57] Patton, 1993 WL 144367, at *14 (internal quotation marks omitted) (quoting Wanzer v. District of Columbia, 580 A.2d 127, 132 (D.C. 1990)).

[58] 2014 WL 12059005, at *1.

[59] Id.

[60] Id.

[61] Id. at *3.

The Court agreed.[62] The Court opined that, because the State had agreed to undertake traffic control for <u>every</u> member of the public travelling through the area of construction, it owed a duty to the public at large rather than to a specific individual.[63] The Court noted that, "if the State had agreed to escort the [plaintiffs] down the road and through the construction area," the outcome of the case would have been different.[64]

Similarly, in <u>Castellani v. Delaware State Police</u>, the Court concluded that the plaintiffs could not bring a wrongful death suit against the DSP, because the DSP had not undertaken an affirmative duty to act on behalf of those particular plaintiffs.[65] In that case, the DSP received numerous calls from concerned citizens reporting a defective traffic light.[66] The plaintiffs' claim arose from the DSP's failure to respond to these reports and repair the defective traffic light in a timely manner.[67] The plaintiffs alleged that the DSP's failure to act ultimately resulted in a fatal car accident.[68] In response, the defendants asserted that the plaintiffs' claim should be

---

[62] <u>Id.</u>

[63] <u>Id.</u>

[64] <u>Id.</u>

[65] 751 A.2d 934, 936 (Del. Super. 1999).

[66] <u>Id.</u> at 935.

[67] <u>Id.</u> at 937.

[68] <u>Id.</u>

barred because, under the public duty doctrine, the DSP owed them no specific duty.[69]

The Court agreed with the defendants, and found that any duties undertaken by the DSP did "not run to [the plaintiffs] specifically."[70] The Court applied the four-factor test, and reasoned that (1) the defendants had not undertaken a duty to act on behalf of those particular plaintiffs; (2) the plaintiffs had not demonstrated that the defendants' inaction in not responding to the intersection to repair the traffic signal would lead to harm to those <u>particular</u> plaintiffs; (3) there was no form of direct contact between the parties; and (4) there was no proof of an "affirmative undertaking" upon which the plaintiffs could have justifiably relied.[71] Accordingly, the Court found that the DSP owed no duty to the plaintiffs, and, therefore, could not be held liable for the accident.[72]

The actions taken by the DSP officers in this case are analogous to the officers' actions in <u>Castellani</u>. Like the officers in <u>Castellani</u>, the DSP officers received a report from a citizen and a request for assistance. However, the officers did not act in accordance with the citizen's request. Although the officers in this case responded to Plaintiff's 911 call, they did not undertake to provide security to the

---

[69] <u>Id.</u>

[70] <u>Id.</u> at 941.

[71] <u>Id.</u>

[72] <u>Id.</u>

Property or arrest the individuals deconstructing the chimney. Rather, upon evaluating the situation, the officers exercised their discretion and ultimately concluded that no arrest was necessary. Thus, the DSP officers' decision to refrain from arresting the men was a discretionary act.

Plaintiff alleges that, by refusing to arrest the individuals dismantling the chimney, the DSP failed to act and breached the duty it owed to her. Even though Plaintiff's claim is based on a failure to act, it still must fail under the four-factor test utilized by the Court in Castellani. First, the DSP assumed no affirmative duty to act on behalf of this particular Plaintiff. Although the DSP officers responded to Plaintiff's 911 call for assistance, they never agreed to provide security specifically to the Property. Their response to the Property was undertaken as part of the duty they owed to the public at large rather than to Plaintiff individually.

Second, Plaintiff has not established that the DSP possessed knowledge that its inaction would lead to harm. Rather, the record suggests that, after arriving at the Property, the DSP officers determined that no arrest or other police action was necessary to prevent harm. Third, the DSP officers did make contact with Plaintiff when they responded to her 911 call. However, during this contact, the DSP officers explicitly told Plaintiff that they would not be arresting the men deconstructing the chimney.

Further, Plaintiff did not establish that she "justifiably relied" on an undertaking by the DSP. There is no evidence that the DSP assumed any kind of duty to (a) provide security specifically to the Property; or (b) stop the deconstruction of the chimney. Further, as discussed above, the officers never indicated to Plaintiff, through their words or actions, that they intended to undertake to provide security or stop the deconstruction of the chimney. Consequently, it seems unlikely that Plaintiff could have "justifiably relied" upon such an undertaking.

In sum, no special relationship existed between Plaintiff and the DSP. Although officers responded to her 911 call, the DSP never undertook to provide individualized security to the Property. Rather, as law enforcement officers, the DSP undertook to provide security and ensure the safety of the community as a whole. After analyzing the situation, the DSP officers exercised their discretion and concluded that no arrest was necessary to prevent harm. The officers explicitly communicated this decision to Plaintiff. Accordingly, given that Plaintiff has failed to show that the DSP owed her an individualized duty, distinct from the duty it owed to the general public, her claim against the DSP must fail under the public duty doctrine.

**B. Plaintiff's Claim Against the Agency Is Barred Under the Doctrine of Exhaustion of Administrative Remedies.**

Plaintiff has also alleged that her claim for compensation was improperly denied by the Agency. Pursuant to 11 Del. C. § 9012(d), Plaintiff had a statutory

right to appeal the Agency's denial of her claim for compensation. Although Plaintiff filed an appeal of the Agency's decision, she failed to attend her hearing before the Agency's Appeal Board. Plaintiff argues that she did not attend the Appeal Board hearing due to a "direct conflict of interest."[73] Specifically, she asserts that the "executive director [of the Agency] was Paige Schmittinger, [an alleged] relative of the law firm, Schmittinger and Rodriguez for whom one of the suspects was a 'Rodriguez[.]'"[74] No further detail or clarity was provided on the alleged conflict of interest beyond the name similarity. After forgoing the Appeal Board hearing, Plaintiff filed the instant suit against the Agency.

Defendants contend that dismissal of Plaintiff's claim against the Agency is warranted because, although Plaintiff filed an appeal of the Agency's decision, she failed to attend her hearing before the Appeal Board. Defendants suggest that Plaintiff's failure to abide by the Agency's statutory appeal process implicates the doctrine of exhaustion of administrative remedies.[75] Under this doctrine, when a remedy before an administrative agency is prescribed, relief must be sought by exhausting this remedy before a court will either review any action by the agency or provide an independent remedy.[76]

---

[73] Pl.'s Mot. to Quash Defs.' Mot. to Dismiss ¶ 4.

[74] Id.

[75] See Defs.' Mot. to Dismiss ¶ 8 n. 17.

[76] Levinson v. Del. Comp. Rating Bureau, Inc., 616 A.2d 1182, 1187 (Del. 1992).

The Court agrees with Defendants. After failing to follow the appropriate appeal process, Plaintiff filed a civil lawsuit, in this Court, against the Agency. Although nominally and procedurally distinguishable from Plaintiff's original claim for compensation, the instant suit substantively asserts the same argument: Plaintiff's desire to be compensated for the value of the deconstructed chimney. At oral argument, Plaintiff admitted that, after refusing to attend the Agency's appeal hearing, she instead decided to pursue her claim for compensation in a "legal matter."[77] Thus, Plaintiff's suit in this Court appears to be an attempt to circumvent the procedural processes available to appeal the Agency's denial of her compensation claim. Plaintiff may not evade the statutory requirements of 11 Del. C. § 9012(d) by disguising her appeal of the Agency's decision as a separate civil lawsuit.

Section 9012 of Title 11 of the Delaware Code lays out the proper path by which an individual may appeal a decision of the Agency to the Superior Court. Under this statute, for Plaintiff's claim to be considered by this Court, Plaintiff needed to (1) request a hearing before the Appeal Board; (2) attend the appeal hearing and present evidence to show why the Agency's decision should be reversed or modified; and (3) file an appeal with the Superior Court if dissatisfied with the

---

[77] Oral Arg. Tr. 23:4-5.

Appeal Board's decision.[78] Because Plaintiff has failed to follow these procedural steps and has consequently failed to exhaust the administrative remedies available to her, she may not avail herself of this Court's review.

## C. The Delaware State Tort Claims Act Bars Plaintiff's Claims

Generally, the doctrine of sovereign immunity provides that a state cannot be sued without its consent.[79] Only an act of the General Assembly can waive the State's sovereign immunity.[80] Delaware's statutory waiver of sovereign immunity is contained in the State Tort Claims Act ( the "TCA").[81] The TCA, 10 Del. C. § 4001, shields State employees from civil liability only if (1) the State employee's conduct arose out of and in connection with the performance of official duties involving the exercise of discretion; (2) the act or failure to act was performed in good faith; and (3) the act or failure to act was done (or not done) without gross or wanton negligence.[82] "Thus, immunity under § 4001 applies to discretionary acts or

---

[78] 11 Del. C. §§ 9012(d)-(e).

[79] Horvat, 2017 WL 5068574, at *1 (citing Zak v. GPM Invs., LLC, 2013 WL 1859344, at *2 (Del. Super. Apr. 30, 2013)).

[80] Zak, 2013 WL 1859344, at *2 (citing Shellhorn & Hill, Inc. v. State, 187 A.2d 71, 74-75 (Del. 1962)).

[81] Goodman v. State, 882 A.2d 173, 178 (Del. 2005).

[82] Wonnum v. Way, 2017 WL 3168968, at *2 (Del. Super. July 25, 2017) (citing 10 Del. C. § 4001); Greenfield ex rel. Ford v. Budget of Del., Inc., 2017 WL 729769, at *2 (Del. Super. Feb. 22, 2017).

omissions done without gross or wanton negligence."[83] A plaintiff must establish the absence of only one of these elements to defeat qualified immunity under the TCA.[84]

A "duty is discretionary if and only if the state actor faced a range of reasonable choices while performing those duties."[85] Here, the DSP officers who responded to Plaintiff's 911 call could have interacted with the men dismantling the chimney in a variety of ways. For example, they could have (1) arrested the individuals; (2) cited the individuals; (3) detained and questioned the individuals; (4) given the individuals a warning; (5) required the individuals to stop the construction on the chimney and leave the property; or (6) allowed the individuals to continue their work on the chimney. Given the array of potential courses of action the DSP officers could have taken, the choice of whether or not to arrest these individuals was discretionary. Second, Plaintiff has provided no evidence to show the DSP officers' choice not to arrest was made in bad faith. Rather, after conversing with the individuals and assessing the situation, the officers believed that no arrest was necessary or warranted.

Finally, Plaintiff <u>does</u> allege that the DSP acted with "gross negligence." However, this bare allegation, without particularized factual support, is insufficient

---

[83] <u>Greenfield ex rel. Ford v. Miles</u>, 211 A.3d 1087, 1097 (Del. 2019) (internal quotation marks omitted) (quoting 10 <u>Del. C.</u> § 4001).

[84] <u>Id.</u>

[85] <u>Id.</u> at 1099.

to survive the TCA. Claims of gross negligence must be pled with particularity.[86] Generally, a plaintiff satisfies the particularity requirement when the pleading advises the defendant of (1) what duty, if any, was breached; (2) who breached it; (3) what act or failure to act breached the duty; and (4) the party upon whom the act was performed.[87] The plaintiff, therefore, may not plead a gross negligence claim with conclusory allegations,[88] but "must plead facts showing who breached their duties to [p]laintiff and how they did so[.]"[89] When evaluating whether a defendant's conduct constitutes gross negligence, this Court conducts an assessment of the "reasonableness of a defendant's actions given the conditions at that time and not whether hindsight would shed more light upon whether any conditions could have served as red flags."[90]

Plaintiff has failed to plead her allegation of gross negligence with particularity. She articulated no facts that would demonstrate the requisite wide disparity between the DSP officers' actions and the general standard of care. Rather, Plaintiff merely asserts that (1) generally, police officers are supposed to protect the

---

[86] Id. at 1101.

[87] Greenfield, 2017 WL 729769, at *2 (quoting Murphy v. Bayhealth Med. Ctr., 2006 WL 509544, at *3 (Del. Super. Jan. 9, 2006)); see also J.L., 33 A.2d at 916 n. 77 (noting that in order for a plaintiff to plead gross negligence with the requisite particularity, the plaintiff must articulate facts that show a wide disparity between the actions actually taken and actions that would have been considered rational under the circumstances).

[88] Id. (citing Tews v. Cape Henlopen Sch. Dist., 2013 WL 1087580, at *2 (Del. Super. Feb. 14, 2013)).

[89] Id.

[90] Greenfield, 211 A.3d at 1101 (citing McCaffrey v. City of Wilmington, 133 A.3d 536, 550 (Del. 2016)).

community; and (2) the officers refused to arrest the men deconstructing the chimney. Further, Plaintiff did not provide the names or any other identifying information of the allegedly grossly negligent DSP officers. Thus, the Complaint fails to put any individual DSP officer on notice of the claims against him or her. Consequently, Plaintiff's claim is barred by the TCA.

Plaintiff reiterates her claim of gross negligence against the Agency. However, Plaintiff, again, has not pled any particularized facts that would support such a claim. Plaintiff has not provided the applicable standard of care or the way in which the Agency's actions or decision to deny her compensation widely diverged from that standard of care. Further, as discussed above, this Court considers Plaintiff's assertion of gross negligence against the Agency to be an attempt to circumvent the Agency's procedural appeal requirements. Plaintiff may not avail herself of this Court's review without first following the proper administrative procedures available to her. Accordingly, Plaintiff's claim of gross negligence against the Agency must also fail.

## IV.  Conclusion

Plaintiff has failed to plead facts demonstrating a conceivable claim against either the DSP or the Agency. The DSP, as a public agency, owes a duty to the public at large. Plaintiff has failed to show that the DSP owed her a duty of care that was distinguishable from the duty it owed to the public generally. Plaintiff's claim

23

against the DSP is also barred by the TCA because (1) the officers' decision to refrain from arresting the chimney workers was discretionary; (2) Plaintiff has provided no evidence that the officers' decision was made in bad faith; and (3) Plaintiff has not pled her claim of gross negligence with the requisite particularity. Consequently, Plaintiff's claim against the DSP cannot succeed.

Further, Plaintiff's claim against the Agency must also fail. Although Plaintiff had a statutory right to appeal the Agency's denial of her compensation claim, she failed to attend her appeal hearing before the Agency's Appeal Board. Consequently, Plaintiff failed to exhaust the administrative remedies available to her before filing the instant suit with this Court. Plaintiff may not disguise her appeal of the Agency's denial of benefits as a separate compensable claim. For these reasons, Plaintiff's claim against the Agency is barred. Thus, even when viewing the facts in the light most favorable to Plaintiff, dismissal is appropriate.

WHEREFORE, for the forgoing reasons, Defendants' Motion to Dismiss is **GRANTED**.


   **IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

24